CAMBRIDGE MANUFACTURING COMPANY ET AL.
*v.* BERTIE LAVENIA JOHNSON,
ADMINISTRATRIX.

[No. 73, October Term, 1930.]

*Decided January 15th, 1931.*

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*William L. Marbury, Jr., Assistant Attorney General,* with whom was *Willis R. Jones, Assistant Attorney General,* on the brief, for the appellants.

*James A. McAllister,* submitting on brief, for the appellee.

Digges, J., delivered the opinion of the Court.

The record in this case presents two questions for our determination, both of which arise out of a claim made under the Workmen's Compensation Act, codified as article 101. The Cambridge Manufacturing Company, one of the appellants, is engaged in the business of manufacturing, mixing, and selling poultry and dairy food. The original claimant, Samuel Richard Johnson, now deceased, was employed in this work from September, 1923, to October 17th, 1928; and at the time of his leaving, and for more than two years prior thereto, he had been foreman. The operation of mixing the feed caused the atmosphere of the room to be impregnated with dust, which at times was quite thick. It further appears that in September, 1928, the claimant, who had been ailing for about a month, consulted a physician and was advised that he was suffering from pulmonary tuberculosis; that he stopped work on October 17th, 1928, and remained

disabled until his death on July 17th, 1929. The claimant asserted that he believed his condition was aggravated by the inhalation of dust in the room in which he worked, and there was medical testimony tending to support him. On November 17th, 1928, the claimant applied for compensation; and in answer to the inquiry, "Describe how accident occurred," he said: "By constant inhalation for the past five years of dust from powdered alfalfa meal, chops, fish meal, etc., while mixing poultry food"; that he was thirty-two years of age and married. The defendants, being the employer and the State Accident Fund, insurer, who are the appellants here, asked a hearing before the commission on two issues, namely: "1. Did the claimant suffer an accidental injury arising out of and in the course of his employment? 2. When, if at all, did the claimant sustain an accidental injury arising out of and in the course of his employment?" After a hearing, the commission, on February 21st, 1929, passed an order disallowing the claim; and on March 1st, 1929, an appeal was taken to the Circuit Court for Dorchester County. On July 17, 1929, while the appeal was pending, the claimant died. Subsequently, on March 15th, 1930, the appellee, widow of the claimant, who had been appointed his administratrix, filed a suggestion of his death and asked that she be permitted to appear as appellant in the proceedings. The defendants filed a motion to dismiss the appeal, on the ground that the claim of the deceased, if he had any, did not survive his death, so as to become a part of his estate. This motion was overruled, and on the same day the case was presented to the jury on the single issue: "Did Samuel Richard Johnson sustain an accidental injury arising out of and in the course of his employment by the Cambridge Manufacturing Company?" At the close of the testimony the defendants offered a prayer for an instructed verdict in their favor on the ground that there was no evidence legally sufficient to entitle the plaintiff to recover; which prayer was rejected. The answer of the jury on the issue presented was, "Yes"; that is, the jury found, as a

matter of fact, that the claimant did sustain an accidental injury arising out of and in the course of his employment by the Cambridge Manufacturing Company. On this finding of the jury, the court reversed the order of the State Industrial Accident Commission. The appeal is prosecuted from that order.

The two questions, then, for our decision are: (1) May an appeal from an order of the commission denying a claim for total disability be prosecuted by the claimant's administratrix for the benefit of his estate? (2) Was the ruling of the trial court on the defendants' first prayer, which sought a directed verdict on their behalf on the ground that there was no evidence legally sufficient submitted in the case to entitle the plaintiff to recover, correct? We will consider these questions in the order named.

A general statement of the apparent legislative purpose is helpful in reaching a conclusion on the first question. If we approach this question in the light of the declared purpose of this legislation in the State of Maryland, as also the general purpose of all such legislation in this country and in England, we are bound to conclude that the purpose was to withdraw from litigation common law actions brought by employees against employers for accidental injuries growing out of and sustained in the course of the employment, and to substitute in the place of the right of action in such cases certain definite and specified amounts to be paid to the injured party, and to his dependents as defined in the statute, in case the injured party died as a result of the injury within three years from the time of the accident causing the injury. Sound economic thought recognized that it is inevitable that employees engaged in extra-hazardous occupation will be injured or killed, and that the care and support of such persons or their dependents will become a burden upon the state, as representing the people at large, and that such result, flowing from the conduct of extra-hazardous businesses, is a legitimate expense of the business itself and ought to be borne by it in the same manner that the hazard from fire or the

replacement of broken or damaged machinery is taken care of. It was also recognized that the common law defenses, resorted to in actions brought by the employee against the employer, of the fellow-servant doctrine, assumption of risk, and contributory negligence, frequently resulted in denying any recovery whatever; while, on the other hand, experience had shown a strong tendency on the part of juries to mulct defendants in heavy damages, sometimes out of all proportion to the actual injury sustained. That the people of the state, at the time of the passage of the present Workmen's Compensation Act, fully realized the evils of the old system, is shown by the preamble to the original act. With this in mind, the statute was designed to benefit both parties: the employers, by making it impossible to have exorbitant and unreasonable judgments obtained against them; and the employees, by providing for them definite and certain compensation for *bona fide* injuries sustained during their employment, without the danger of being defeated by the application of the hard and fast rules of the common law. The cost to the employer of the proper operation of such a system is not onerous, if by the administration of the law its subjects are confined to those provided in the statute and in the manner therein provided.

There is an undoubted tendency on the part of commissions and the courts, due to the persistent application of injured persons, to broaden the provisions of the law through administrative or legal interpretations. This, it seems to us, is a real danger to be guarded against, lest the economic benefit sought to be accomplished by such enactments be practically frustrated by employers being driven to the necessity of employing only those who are physically perfect, thereby excluding entirely competent and efficient persons, who may have some slight ailment or disease, from receiving any employment at all. This was not the purpose of the Legislature; and if an interpretation be given which is tantamount to health insurance, it will become more and more difficult for employees who have passed middle age, or who

from one cause or another are not perfect physical specimens, to obtain and keep employment.

Whom, then, did our act purpose to compensate? Clearly two, and only two, classes of persons: First, the injured party himself; and, second, in case the injury resulted in death, such persons as the act provided are his dependents entitled to receive compensation because of loss of support theretofore rendered them, which loss was occasioned by the injury. In our opinion, it cannot be gathered from this legislation as a whole that it was the intent of the law-makers to enrich persons who were strangers to the injured party and who were not directly affected by his loss of earning capacity. It is clear that it was never the intention to create an insurance to the injured party, which upon his death would form a part of his estate. Such conclusion is reached from the declared legislative purpose, and an examination of the structure and framework of the act as a whole. This being true, are there any specific provisions contained in the act, or are there any previous decisions of this court, which compel a determination in the case before us contrary to what we believe to have been the general purpose of the Legislature?

There appears to be no case in this court where the question has been directly passed upon, although it can be easily seen that its determination is important as an instruction to the commission in the administration of the Workmen's Compensation Law. It being a case of first impression, its decision must depend upon the construction of our statute, decisions of other courts being only persuasive to the extent that the reasoning employed is applicable to the specific provisions of the Maryland law. As was stated in *Sea Gull Specialty Co. v. Snyder*, 151 Md. 78, 134 A. 133, 134: "It is, however, true that, in dealing with questions involving the construction of statutes, decisions of other courts of last resort are of little practical value to any greater extent than the reasoning employed may appeal as being sound, because there are nearly as many different statutes dealing with and covering workmen's compensation as there are states in the Union, and such decisions as we have are those construing

the statute of the particular state wherein the court is located." In that case the court quoted from *State Accident Fund v. Jacobs' Admr.*, 140 Md. 622, 118 A. 159, also a compensation case, wherein Chief Judge Boyd, speaking for the court, said: "Courts should be governed by the plain language of the statute, and not by a strained construction making the Legislature say something which it did not say, even if the court was inclined to differ as to the wisdom of the legislation. That is not for the court to determine—its duty is to ascertain what the Legislature said, and, if it had the right to say what it did say, to be governed by it"; and went on to say: "It follows, therefore, that, in determining the question before us, we should be confined to determining the true meaning of the language employed by the Legislature, and not allow the construction to be influenced by what, in our opinion, the Legislature should have said."

The particular section under consideration is section 36, which provides: "Each employee (or in case of death his family or dependents) entitled to receive compensation under this article shall receive the same in accordance with the following schedule and except as in this article otherwise provided, such payment shall be in lieu of any and all rights of action whatsoever against any person whomsoever." Subsection 1 provides: "Permanent total disability. In case of total disability, adjudged to be permanent, sixty-six and two-thirds per centum of the average weekly wages shall be paid to the employee during the continuance of such total disability, not to exceed a maximum of eighteen dollars per week, * * * unless the employee's established weekly wages are less than eight dollars per week at the time of the injury, in which event he shall receive compensation in an amount equal to his average weekly wages, but not to exceed a total of $5,000." Subsection 2 deals with temporary total disability, and provides: "In case of temporary total disability, sixty-six and two-thirds per centum of the average weekly wages shall be paid to the employee during the continuance thereof, but not to exceed a maximum of $18 per week, * * * but in no case to continue more than six years from

the date of the injury or to exceed three thousand seven hundred and fifty dollars in the aggregate." Subsection 3, "Permanent partial disability," provides: "In case of disability partial in character but permanent in quality, the compensation shall be sixty-six and two-thirds per centum of the average weekly wages, in no case to exceed eighteen dollars per week; * * * but in no case to exceed more than three thousand seven hundred and fifty dollars, in the aggregate and shall be paid to the employees for the period named in the schedule as follows." It then goes on and provides for payment for a varying number of weeks for the loss of different members of the body, and further provides: "The compensation for the foregoing specific injuries shall be paid in addition to, and consecutively with, the compensation hereinbefore provided for in subsection 2 of this section. If an employee dies, the right to any compensation payable under this subsection, unpaid at the date of his death, shall survive to and vest in his personal representatives." From the above quotations from the statute it will be seen that, in respect to permanent partial disability, dealt with in subsection 3, the Legislature specifically provided that if an employee, entitled to compensation under the provisions of that subsection, dies prior to the full payment of the award to him, the right to the remainder shall survive to and vest in his personal representatives; while in that class of cases covering permanent total disability and temporary total disability, embraced in subsections 1 and 2, there is no such provision. We cannot read into subsections 1 and 2 the provisions in regard to the survivorship to the personal representatives in case of death of the employee, contained in subsection 3; for to do so would be usurping a legislative function and result in the court saying something that the Legislature has not said, simply because we may be of the opinion that the Legislature should have said it. Holding thus, the question is, if we entirely disregard the provisions of subsection 3, does an award made to an employee under subsection 1, in case of the employee's death, survive to his personal representative? It is argued by the appellant that it does not: First,

because the Legislature in terms has not so declared; and, second, because the fact that it did so declare in respect to awards under subsection 3 is indicative that a construction which would read that provision into subsection 1 would be violative of the legislative intent.

In the case of *Adleman v. Ocean Accident Corp.*, 130 Md. 572, 101 A. 529, 531, the question to be decided was whether or not a dependent sister, who had been awarded compensation upon the death of her brother, the injured party, would lose the benefit of such award upon her marriage. It was argued by the insurance company that because the Compensation Law contains a provision that an award made to the widow of the deceased injured party should cease upon her remarriage, such provision was indicative of the legislative intent to the effect that the marriage of any female dependent would work a cessation of the award as to her. The court rejected that contention, for the simple yet controlling reason that the statute was silent as to the effect which marriage of any dependent, other than the widow of the injured party, would have upon the compensation awarded; the court there saying: "Section 42 provides that: 'In case of the remarriage of a dependent widow of a deceased employee without dependent children, all compensation under this act shall cease,' etc. But there is no such provision in reference to other dependents mentioned in the act, and it is reasonable to conclude that if the Legislature, while dealing with the subject of abatement of compensation, had intended the compensation provided for a sister to abate upon her marriage it would have so declared in plain terms. * * * This obligation to pay and the right to receive are not, by the terms of the act, made conditional upon the beneficiary remaining unmarried, or dependent upon his or her subsequent state of dependency, and nowhere in the act is there found express authority to the commission to abate the compensation." The reasoning employed in that case, in holding that a provision of the statute which abated an award to the widow of the injured party upon her remarriage was not indicative of the legislative intent that a dependent sister upon her marriage would lose

the award, but rather indicated a contrary purpose, is applicable in the case before us; and it follows that because the Legislature provided in cases of permanent partial disability any award not paid to the injured party during his lifetime would survive to and vest in his personal representatives is no indication that it intended the same provision to apply in case of the death of one permanently totally disabled. If there can be legitimate inferences drawn from that fact, the stronger one is that the Legislature intended the award to abate in cases covered by subsections one and two, but did not desire it to abate in cases covered by subsection three, and in order to prevent abatement in that case, found it necessary to specifically provide that the award should survive and vest in the personal representatives of the deceased.

It would seem that the first paragraph of section 36, which provides, "Each employee (or in case of death his family or dependents) entitled to receive compensation under this article shall receive the same in accordance with the following schedule and except as in this article otherwise provided, such payment shall be in lieu of any and all rights of action whatsoever against any person whomsoever," indicates clearly that the persons to be benefited, and to whom awards of compensation could be made, were the injured employee, or in case of his death, his family or dependents, and excludes a construction which would result in compensating those outside of these two definite and designated classes.

It is true that, in *State Accident Fund v. Jacobs, supra,* this court decided that, where a dependent had been awarded compensation and subsequently died, the unpaid portions of the award could be collected by her personal representative; but subsequent to the accidental injury for which compensation was awarded in that case, the Legislature, by section 3 of chapter 456 of the Acts of 1920, amended the law in that regard and provided: "The right to any compensation payable to any dependent and unpaid at the date of death of any such dependent shall survive to and be vested in the surviving dependents as the Commission may determine, if there

be such surviving dependents, and if there be none such, then the compensation shall cease." The act of 1920 was not controlling in the *Jacobs* case, because, although it had been passed before the decision in that case, the injury for which compensation was awarded occurred a number of years before the passage of that act. Judge Boyd, in the course of the opinion, referred to that fact and said: "If it is an unnecessary or improper burden to be put on an insurance company, or unfair advantage given to the estate of a sole dependent who died before the eight-year period had elapsed, it has now been corrected by the statute, and perhaps there are few, if any, other cases in this state affected by our decision." From this language, and the fact that the court was dealing specifically and exclusively with that portion of the act regarding dependents, it is evident that that decision was not intended as a binding authority in the construction of other sections of the act which might be said to be analogous. Again, while the effect of that decision was to permit strangers to the injured party to benefit, it has now been changed by legislative enactment, and we are unwilling to extend its operation beyond the specific subject matter with which it dealt, namely, an award which had been made to a dependent who subsequently died. There is a distinction between that case and the one now before us, in that it could not result in giving to the class designated as dependents more than the statute in terms provided, while here it could easily, and in many cases would, result in dependents receiving a large part of the award originally made to the injured party, by reason of their being the personal representatives of the deceased, and at the same time receiving the full amount provided in the statute for dependents.

In *Sea Gull Specialty Co. v. Snyder, supra,* it was determined that, in case of death of the injured party, what compensation he had received before death could not be deducted from the amount to which the dependent was entitled after death; or, in other words, that while both awards grew out of the same injury, nevertheless they were to secure different compensation to different classes, and the receipt of compen-

sation by the injured party could not be made the basis of a deduction from the claim of the dependent. The law created two classes who were, under its provisions, the objects of its bounty: First, the injured employee, who is entitled to payment as a compensation for his loss or diminution of earning capacity; and, second, in case he died from the injury within the time specified, those who were dependent upon him.

We are unwilling to adopt that construction of the act which would hold that an award to an injured employee is equivalent to the setting aside of a sum equal to the full amount of the award, to be paid in installments to the injured party, should he live for a sufficient length of time to consume it all, but, if not, to constitute a part of his estate. If such a construction is sound, then it would be difficult to see how the award could be divested of the attributes of a vested interest, which would not only descend to his personal representatives upon death, but which he could dispose of by will or by assignment. Section 52 provides: "No money payable under this article shall prior to issuance and delivery of the warrant or voucher therefor, be capable of being assigned, charged or taken in execution or attachment." This provision accords with the conclusion we have reached, and would also seem to controvert the idea that the act created a vested right in the full amount of the award. There was no oral argument on the part of the appellee, and the extent of her contention, as made in the brief, is not altogether clear. We are of the opinion that she was a proper party to be substituted in the place of the claimant in the lower court, but that, as his administratrix, she is restricted to collecting only so much of the award, if any, made to the claimant which became due and payable before his death. In other words, if an injured person has been awarded, by the commission or by the court on appeal, compensation, even though the decision of the court were after his death, his administrator would be entitled to collect that portion which he would have been entitled to collect up to the time of his death. As to that portion of the award which the injured person was not entitled to have paid to him personally dur-

ing his lifetime, in our opinion, no administrator or other person has the right to collect after his death.

We come now to the second point, which is raised by the refusal of the defendants' first prayer. The correct conclusion on this point is arrived at by determining whether or not there was an accidental injury suffered by the claimant, arising out of and in the course of his employment. It may be admitted that the claimant was suffering injury from disease, and, further, that the disease made its appearance during the period of his employment; but we still have the remaining and vital. inquiry: Was the injury or disease (using the terms synonymously in this connection) accidental? There is a total absence of evidence of any external injury that could have caused the disease or aggravated and accelerated it. There are a number of previous decisions of this court (as illustrated by the case of *Dickson v. Beasley,* 146 Md. 568, 126 A. 907, 910), by which it has been determined that any aggravation or acceleration of a disease or infection, by an injury resulting in disability, is compensable; but in every case the injury was such as could be pointed to as having occurred at a definite time and place. In the *Beasley* case the claimant was struck on the arm and forehead by a flying piece of concrete, at the time he was infected with syphilis. In a short time after the blow on the forehead, an abscess formed about the point of contact, and his condition became such as disabled him from working. In *Standard Gas Equip. Corp. v. Baldwin,* 152 Md. 321, 136 A. 644, 647, there was evidence that the workman was suffering with heart disease, and at the time of his death was transferring molten metal in a ladle and placing it in molds, during which time he was seen to fall to the floor and receive burns about his body, the shock of which, according to the evidence, may have been the direct cause of the heart attack which resulted in his death. In *Kauffman Const. Co. v. Griffith,* 154 Md. 55, 139 A. 548, 549, the claimant had "old heart trouble," but which, the evidence showed, was set in motion and aggravated by an injury caused by the sudden jerking of the tongue of a road scraper, at which time the

claimant said "I wrenched myself, and I felt something tear loose in here." In each of the above cited cases compensation was allowed. In the *Beasley* case it was said: "It has been established that, when disease or infection is so set in motion or aggravated by an injury that disabilities result which would not otherwise have occurred, such disabilities are to be treated as the results of the injury." In the *Baldwin* case the court referred to *Clover Clayton & Co. v. Hughes,* 3 B. W. C. C. 275, as being illustrative of the English view, and said: "The test applied in that case was whether the work then being done contributed substantially to the happening or was merely the occasion of it. If the former, it was an accident, and the injury was compensable; otherwise, if the thing happened in the natural and ordinary progress of the disease. That case has been generally followed in England and in some jurisdictions in this country. In others it is held that injury or death due to disease is not an accident, unless contributed to by some exterior force. Still others take a middle course, and hold that there need be no exterior force if the progress of the disease (not occupational) is hastened by some unusual strain or condition in the course of work. In the opinion of the majority of the court, the last mentioned view is the one most consonant with 'accident' as ordinarily understood, and with the meaning of the Legislature." On the other hand, if there be no evidence of an accident causing or accelerating the disease, no compensation is allowed. *Slacum v. Jolley,* 153 Md. 343, 138 A. 244, 248; *Miskowiak v. Bethlehem Steel Co.,* 156 Md. 690, 145 A. 199, 200; *Atlantic Coast Shipping Co. v. Stasiak,* 158 Md. 349, 148 A. 452; *Gunter v. Sharp & Dohme,* 159 Md. 438, 151 A. 134, 137. The *Jolley* and *Miskowiak* cases were both heat prostrations; and in denying compensation in the *Jolley* case the court, speaking through Judge Offutt, said: "And, if heat stroke or heat prostration are caused by unusual and extraordinary conditions in the employment which cannot be regarded as naturally and ordinarily incident thereto, there is no apparent reason why such injuries should not be compensable. * * * But, to entitle the claimant to compensation,

it was essential that there be at least some evidence that her husband died of heat stroke or heat prostration, and that such injury was occasioned by some unusual and extraordinary condition in his employment not naturally and ordinarily incident thereto, and there is no such evidence in this case." In the *Miskowiak* case, speaking through Judge Parke, we said: "The employee had been engaged in the routine performance of his daily labor and had completed his day's work without receiving any injury by impact or contact or as the result of an unusual muscular exertion or unexpected movement. There is no question, however, that he died of heat stroke or prostration, but, before his injury may be held compensable, there must be legally sufficient evidence that * * * such injury was occasioned by some unusual and extraordinary condition in his employment, not naturally and ordinarily incident thereto." In the latest expression of the court on the subject, the *Gunter* case, we adopted the language used in *U. S. Mutual Accident Assn. v. Barry*, 131 U. S. 100, 9 S. Ct. 755, 33 L. Ed. 60: "That if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforeseen, unexpected, unusual, occurs which produces the injury, then the injury has resulted through accidental means."

The principles enunciated in the decisions above quoted are, we think, controlling in the case before us, and make it unnecessary to elaborate upon what has been so recently said. In the *Gunter* case the facts were strikingly similar to those now before us. The plaintiff was engaged in the mixing of bichloride and cyanide powders, and had been so engaged for three years preceding the disability for which he claimed compensation. He was suffering from nephritis or Bright's disease, which he contended was the result of an accidental injury; the accident alleged being the inhalation of the fumes or dust arising from the bichloride of mercury and cyanide of potassium. There, as here, it was claimed that he worked in an improperly ventilated room; but it was

shown that he knew the conditions under which he was required to work, which were those usually incident to such employment. The facts in that case were stronger in favor of the right to compensation than here. The record now before us discloses that the business of the employer was that of operating a flour mill, grinding and mixing poultry feed. The claimant was a foreman in charge of the mixing department, and had been such for more than two years before his disability became apparent. The mixing operations were carried on in a large room with five doors and eight windows, some of which windows seem to have been at times closed by the piling of sacks of poultry feed in front of them. The claimant had entire charge of this room, had men working under him, and in operating he was at perfect liberty to open or close any or all of the windows and doors, dependent upon his pleasure. It is also uncontradicted that, in addition, he on one occasion suggested the use of masks; whereupon the secretary-treasurer of the employer bought two or three of them and delivered them to the claimant personally, it being left to him or the other help "to use them at their own discretion." Under the conditions shown by this record, after careful examination and with due regard for the inferences which can be properly drawn therefrom, we are of the opinion that the court erred in not withdrawing the case from the jury. It follows that the judgment of the lower court must be reversed.

> *Judgment reversed, and case remanded, that an order may be passed in accordance with this opinion, with costs to the appellant.*