725 A.2d 563

NATIONAL CORPORATION FOR HOUSING PARTNERSHIP,
MEADOWOOD TOWNHOUSE, INC. et al.

v.

Shirley Jean KELLER (Deceased).

No. 52, Sept. Term, 1998.

Court of Appeals of Maryland.

March 10, 1999.

James A. Haynes (Adam Daniel Metz, on brief), Towson, for Petitioners.

Robert Taylor, Jr. (Ingerman & Horwitz, on brief), Baltimore, for Respondent.

Argued before BELL, C.J., and RODOWSKY, CHASANOW, RAKER, WILNER, CATHELL and THEODORE G. BLOOM (retired, specially assigned), JJ.

WILNER, Judge.

The issue before us is whether, for purposes of Maryland Code, § 9–632(c) of the Labor and Employment Article, Kenneth Keller is a "surviving dependent" of his mother, Shirley Keller, and, as a result, is entitled to receive the permanent partial disability benefits that otherwise would have been awarded to Ms. Keller had she not died prior to the entry of the award. We shall hold that he was not a surviving dependent and, for that reason, shall reverse the judgment of the Court of Special Appeals in *Meadowood v. Keller*, 119 Md. App. 566, 705 A.2d 142 (1998).

## BACKGROUND

The relevant facts, which are not in substantial dispute, are well-summarized by Judge Hollander for the Court of Special Appeals. On February 19, 1990, Ms. Keller suffered a serious accidental injury to her neck and shoulder in the course of her employment by petitioner. After the accident, Ms. Keller's adult son, Kenneth, who was living in California, came to Maryland to care for her, and, as a result, became financially dependent on his mother. At some point, Ms. Keller filed a claim for workers' compensation benefits, seeking both temporary total and permanent partial disability benefits. She received an award of temporary total disability benefits, but on February 1, 1994, while her claim for permanent partial

disability benefits was still pending before the Workers' Compensation Commission, Ms. Keller died of sudden cardiac arrest. Three important facts are conceded for purposes of this appeal: (1) that her death was completely unrelated to the 1990 accident; (2) that at the time of the accident, Kenneth was not financially dependent on his mother; and (3) that at the time of her death, he *was* financially dependent upon her.

In February, 1995—a year after Ms. Keller's death—the Workers' Compensation Commission found that she had sustained a permanent partial disability amounting to a 75% industrial loss of use of her body as a result of the 1990 accidental injury. In July, 1995, following a hearing, the Commission determined that Kenneth qualified as a surviving dependent of Ms. Keller and, pursuant to § 9–632, awarded him the permanent partial disability benefits of $180/week for 500 weeks that otherwise would have been awarded to Ms. Keller. The Circuit Court for Baltimore County affirmed that determination, and the Court of Special Appeals affirmed the judgment of the circuit court.

## DISCUSSION

The issue before us is purely one of statutory construction. It involves directly § 9–632 of the Labor and Employment Article, but it implicates as well a number of other sections of that article, principally §§ 9–640, 9–646, and 9–678 through 9–686. To put those statutes in a proper perspective, it is important to keep in mind that the workers' compensation law provides benefits for a number of different kinds of disabilities arising from job-related injuries and diseases, among which are weekly monetary benefits for temporary disability (both partial and total), permanent disability (both partial and total), hernia, and death. Benefits for disability and hernia are awarded to the injured employee; by virtue of §§ 9–632, 9–640, and 9–646, however, the right to collect those benefits survives if the employee dies before they are paid in full from a cause that is not itself compensable under the Act. In that event, the remaining benefits payable under the award are paid to the employee's surviving dependents or, if there are no

such dependents, to other persons designated in those sections. Death benefits obviously cannot be awarded to the employee but are instead awarded to persons who were dependent on the deceased employee, in accordance with §§ 9–678 through 9–686.

As a result of these provisions, it is possible, when an employee is injured in a job-related accident and then dies, for a dependent of that employee to collect workers' compensation benefits in either, but not both, of two different settings. One setting is that provided for in §§ 9–632, 9–640, and 9–646—the survival sections applicable, respectively, to benefits for permanent partial disability, permanent total disability, and hernia. The relevant parts of those statutes are identically worded. Section 9–632(b)—the section applicable in this case—provides that "if a covered employee dies *from a cause that is not compensable under this title,* the right to compensation that is payable under this Part IV of this subtitle [ permanent partial disability] and unpaid on the date of death, survives in accordance with this section." (Emphasis added.) Section 9–632(c) states that, "if there are surviving dependents of the covered employee, the right to compensation survives to the surviving dependents as the Commission may determine." Subsections (d) and (e) provide for what happens when there are no surviving dependents: if, on the date of the employee's death, the employee had a legal obligation to support a surviving spouse, the right to compensation survives to the surviving spouse and the surviving minor children of the employee; in the absence of such an obligation to a surviving spouse, the right to compensation survives only to the surviving minor children.

As we pointed out in *City of Baltimore v. Cline,* 266 Md. 42, 291 A.2d 464 (1972), quoting from the opinion of the Court of Special Appeals in that case, the right to compensation by dependents under what is now § 9–632 is derivative: "it is not the death which is compensable under the statute but rather the injury, and it is the right of the workman himself to collect the benefits unpaid from that injury at the time of his death which survives. Those who take, in the event of his death,

take under him, and not independently." *Id.* at 44, 291 A.2d at 465.

The second setting, dealt with in §§ 9–678 through 9–686, arises when the employee dies from a cause that *is* compensable, *i.e.*, when he or she dies from the job-related injury. In that setting, it is the death of the employee that is the compensable event, and the right of the dependent to collect the death benefit is direct, not derivative. *Sea Gull Specialty Co. v. Snyder,* 151 Md. 78, 134 A. 133 (1926). As the Court of Special Appeals explained in *Cline v. City of Baltimore,* 13 Md.App. 337, 341, 283 A.2d 188 (1971), *aff'd per curiam, City of Baltimore v. Cline, supra,* 266 Md. 42, 291 A.2d 464, where death occurs as the result of the compensable injury "the right of the surviving dependents to death benefits is separate and independent of the injured employee's rights" and "is an independent right derived from statute, and not from the rights of the decedent."

Section 9–632 does not specify directly whether dependency is to be determined as of the time of the accidental injury or as of the time the employee dies. It speaks only of "surviving dependents of the covered employee" and does not distinguish between dependents who were wholly dependent on the employee and those who were only partly dependent. The sections dealing with death benefits are more explicit, in a number of respects. Section 9–680, for example, sets forth certain circumstances in which persons who would otherwise be regarded as dependents may not receive any compensation—a surviving spouse who deserted the employee either more than one year before the injury or any time after the injury, a surviving spouse who married the employee after the injury if the couple had no dependent children, and, with certain exceptions, a person who became dependent on an employee who died of an occupational disease if the dependency commenced after the employee's first compensable disability. Sections 9–681 and 9–682 distinguish between persons who were wholly dependent on the employee and those who were only partly dependent, in terms of the amount and duration of the benefit. Section 9–683 allows the Commission

to apportion death benefits among multiple dependents and requires certain dependents to apply amounts received for the benefit of other dependents.

Under the statutory scheme set forth in §§ 9–678 through 9–686, the Commission must focus both on the time of the death-causing accident and on the time of the employee's death in determining dependency. Section 9–681(a), with respect to wholly dependent individuals, requires payment of a death benefit only to "individuals who were wholly dependent on a deceased covered employee *at the time of death* resulting from an accidental personal injury or occupational disease." (Emphasis added.) The focus on dependency at the time of the employee's death appears in other parts of § 9–681 as well. Section 9–681(d) and (e), for example, refer to a "surviving spouse who is wholly dependent at the time of death." Section 9–681(h) contains similar language with respect to a dependent child. Section 9–682(a), dealing with partly dependent individuals, is not so specific as § 9–681, but certainly implies that, to be eligible for death benefits, the claimant must have been partly dependent on the deceased employee at the time of the employee's death.[1] On the other hand, § 9–679, with exceptions not relevant here, provides that "the Commission shall determine all questions of partial or total dependency in accordance with the facts of each case that existed: (1) at the time of the occurrence of the accidental personal injury that caused the death of the covered employee; or (2) on the date of disablement from the occupational disease that caused the death of the covered employee."

The case law, from the earliest days of the workers' compensation law, makes clear that, notwithstanding the statutory references to dependency at the time of the employee's death, the fact of dependency, with respect to death benefits, is determined and becomes fixed as of the time of the death-

---

**1.** Section 9–682(a) provides that "[i]f there are no individuals who were totally dependent on the deceased covered employee at the time of death, but there are individuals who were partly dependent, the employer or its insurer shall pay death benefits in accordance with this section."

causing injury. *See Adleman v. Ocean Acc. & Guar. Corp.*, 130 Md. 572, 101 A. 529 (1917); *Community Baking Co. v. Reissig*, 164 Md. 17, 164 A. 176 (1933); *Meyler v. Mayor and City Council*, 179 Md. 211, 17 A.2d 762 (1941). The fact of dependency—whether the claimant was wholly or partly dependent on the employee—is therefore to be determined in accordance with the circumstances existing at the time of the accident, not at the time of death. The direct or implicit reference in §§ 9–681 and 9–682 to the claimant being a dependent at the time of the employee's death means only that, to be entitled to the death benefit, the claimant must survive the employee. That approach is consistent with, and indeed is compelled by, § 9–685, which provides that, if a dependent of the employee dies, the right to any death benefit that is payable to the dependent and remains unpaid at the dependent's death survives to the "surviving dependents of the covered employee," and, if there are none, does not survive.

Petitioner's position throughout this case has been that dependency for purposes of § 9–632 must be determined as of the date of the accident, as it is under § 9–679, and that, as Kenneth was not dependent on his mother at the time of her accident, he is not entitled to receive the award for permanent partial disability that, but for her death, would have been paid to Ms. Keller. It urges that the Maryland courts have "uniformly held that a 'dependent' person is one who relied on actual support from the injured worker at the time of the worker's accidental injury," that its view "allows a predictable scheme of compensation," and that the contrary view "fails the test of logic and leads to absurd, inconsistent, and inequitable results." The argument is based largely on the notion that the word "dependent" is, in effect, a defined term—a "word of art"—in the workers' compensation law, defined in § 9–679 as a person who is dependent on the covered employee at the time of the accident or disablement, and that the Legislature would not have used the same word in § 9–632 (or § 9–640 or § 9–646) with the intent that it have a different meaning than it has in § 9–679. If the Legislature meant for dependency to

be determined in a different manner under § 9–632, petitioner avers, it would have said so.

The Commission and the two lower courts rejected that argument. The circuit court focused on § 9–632(d) and (e), which speak of what happens if, *on the date of the employee's death*, the employee either did or did not have a legal obligation to support a surviving spouse, as indicative of an intent that dependency under that section also be determined as of the date of the employee's death. The Court of Special Appeals took a somewhat different approach in reaching the same result. It focused on the statement in § 9–632(c) that the right to compensation survives to the surviving dependents "as the Commission may determine," concluding from that statement that the Commission has discretion to determine whether dependency is to be fixed at the time of accident or the time of death. Although, as the Court of Special Appeals observed, the statute is not free of ambiguity, we believe that petitioner's view is the more accurate one—the one most consistent with the likely legislative intent.

The initial workers' compensation law (1914 Md. Laws, ch. 800) did not contain a survival provision with respect to the various disability benefits payable to employees. That omission was consistent with the general rule noted by Professor Larson that a workers' compensation award "is a personal one, based upon the employee's need for a substitute for his lost wages and earning capacity." 4 LARSON'S WORKERS' COMPENSATION LAW, § 58.42 (1998). As we pointed out in *Cambridge Mfg. Co. v. Johnson*, 160 Md. 248, 253, 153 A. 283, 285 (1931), it was not the intent of the 1914 Legislature "to enrich persons who were strangers to the injured party and who were not directly affected by his loss of earning capacity" or "to create an insurance to the injured party, which upon his death would form a part of his estate."

The initial Act did, however, provide a death benefit for dependents of employees who died as the result of a compensable accident. Section 35 provided that if the injury caused death within two years and there were "wholly dependent

persons at the time of the death," the employer was to pay an amount equal to 50% of the employee's average weekly wage for the remainder of the period between the date of death and eight years after the date of the injury, subject to a maximum and a minimum. If there were partly dependent persons, the same benefit was to be paid for the period of eight years after the date of injury, subject to a lower maximum. The law presumed certain persons to be wholly dependent for support on a deceased employee—(1) a wife, (2) a physically or mentally incapacitated husband, and (3) a child either under 16 or over 16 if physically or mentally incapacitated, who was "living with or dependent upon the parent *at the time of the injury or death.*" (Emphasis added.) In all other cases, the law said, questions of dependency were to be determined in accordance with the facts in each case *"existing at the time of the injury* resulting in death of such employee," although a person could not be considered a dependent unless he or she was a parent, grandparent, stepchild, grandchild, or sibling of the employee. (Emphasis added.)

The statutory requirement that the dependency of one not *presumed* to be dependent be determined based on the facts existing at the time of injury was quickly enforced by this Court. In *Adleman v. Ocean Accident & G. Cor., supra,* 130 Md. 572, 101 A. 529, an employee died in December, 1914, from an accidental injury. In April, 1915, the Commission made an award to the employee's dependent unmarried sister. In June, 1915, the sister married, thereby terminating her actual dependency on her brother. We held that the award did not terminate by virtue of the marriage, concluding that a contrary result would be inconsistent with the direction that dependency be determined based on the facts existing at the time of the injury. We contrasted the situation of a surviving spouse, as to whom the statute specifically terminated benefits upon remarriage.

That has remained our unwavering view since *Adleman.* Although the death benefit provision has been amended many times since 1914, to increase the amount and duration of the benefits, to lengthen to seven years the requirement that

death ensue within a fixed time after the injury, to remove the presumption of dependency initially afforded to spouses and minor children, and to delete the requirement that a person be a parent, grandparent, child, stepchild, or sibling in order to be a dependent, we have consistently construed the death benefit provision as requiring that the fact of dependency be determined in accordance with the circumstances existing at the time of the accident, even to the point of including that requirement as part of the definition of "dependent." See, for example, *Meyler v. Mayor and City Council, supra,* 179 Md. 211, 215, 17 A.2d 762, *Mullan Construction Co. v. Day,* 218 Md. 581, 586, 147 A.2d 756, 759 (1959), and *Johnson v. Cole,* 245 Md. 515, 520, 226 A.2d 268, 270 (1967), where we defined a "dependent" within the meaning of the statute as "one who relies in whole or in part upon the workman for the reasonable necessities of life *at the time of the accident.*" (Emphasis added.)

In 1920, the Legislature made a number of changes to the law, mostly of a liberalizing nature, and, for the first time, added a survival provision. In the subsection dealing with *permanent partial* disability benefits, the General Assembly provided that, "[i]f an employee dies, the right to any compensation payable under this Sub–Section, unpaid at the date of his death, shall survive to and vest in his personal representatives." For whatever reason, the Legislature was content, at the time, to limit the survival provision to permanent partial disability benefits and to permit the survival of those benefits to go to the employee's estate rather than to those persons who were dependent on the employee. Significantly, the law did not require that the employee have died from causes unrelated to the accident.

In *Sea Gull Specialty Co. v. Snyder, supra,* 151 Md. 78, 134 A. 133, we drew a clear distinction between the employee benefit and the death benefit provisions. In 1923, the employee received an award for temporary total disability of $18/week for 87 weeks. In 1925, he died as the result of the injuries sustained in the accident, and his widow received an award of death benefits, which, in addition to funeral ex-

penses, amounted to $5,000, payable at $18/week for 277 weeks. The employer sought to deduct from that award the benefits previously paid to the employee, and thus limit the death benefit to 190 weeks. We rejected that approach, holding that the widow's right to death benefits was independent and had no connection with the separate right of her husband to collect benefits for his disability. The widow, we held, was entitled to the full 277 weeks.

Under the scheme set forth in the 1920 law, the issue of dependency could arise only in the context of a death benefit, and the law clearly declared that dependency for that purpose was to be determined based on the circumstances existing at the time of the accident. The issue could not have arisen with respect to the survival of benefits awarded to the employee, because, to the extent that those benefits *did* survive, which was the case only with respect to permanent partial disability benefits, the unpaid benefits were payable to the personal representative, not to any dependents. That changed in 1945, when, through 1945 Md. Laws, chapters 336 and 462, the Legislature amended the provisions dealing with permanent partial disability, permanent total disability, and hernia (1) to provide for the survival of unpaid permanent total disability and hernia benefits, and (2) to recast the survival provision as to all three categories so that any benefits accrued and unpaid at the date of the employee's death survived to the employee's "surviving dependents as the Commission may determine, if there be such surviving dependents, and if there be none such then to his personal representatives." [2]

The 1945 statutes first created the question of whether the Legislature intended the "surviving dependents" with respect to the survived benefits to be the same persons entitled to death benefits. Indeed, that question was raised most directly, as the right to survived benefits still did not require that

---

**2.** 1945 Md. Laws, chapter 336 extended the survival provision to hernia benefits and substituted surviving dependents as the primary beneficiary. Chapter 462 provided for the survival of unpaid permanent total disability benefits.

death ensue from a cause unrelated to the accident. Under the two 1945 Acts, it was possible for a dependent to recover both the unpaid benefits awarded to the employee and the death benefit. The survival provisions were added to the same section of the Code (Article 101, § 48) that contained the death benefit provision, which itself was amended by chapter 335 to increase the amount of death benefit. There can be no doubt that the legislative focus in that session was on both the survival and the death benefit provisions. The Acts that amended and extended the survival provisions were introduced as House Bills 125 and 126; the Act that amended the death benefit provision was introduced as House Bill 123. It appears that all three of those bills emanated from the Legislative Council.

The extension of a survival provision to permanent total disability and hernia benefits may have been a delayed reaction to our conclusion in *Cambridge Mfg. Co. v. Johnson*, 160 Md. 248, 153 A. 283 (1931), that, as the survival provision added in 1920 related only to permanent partial disability benefits, a claim for permanent total disability benefits lapsed upon the death of the employee and could not be pursued by the employee's personal representative. We have uncovered no direct legislative history indicating the purpose of substituting dependents for the personal representative.

In 1947, only two years later, the Legislature amended the law again, in three relevant respects. *See* 1947 Md. Laws, ch. 895. With respect to the survived benefits, the Act (1) added as a condition to survival that the employee have died from a non-compensable cause, thereby eliminating the possibility introduced in 1945 that a dependent could recover both the balance of the employee's benefits and a death benefit, and (2) removed entirely the prospect of a claim by the personal representative. The Act provided that, upon the death of an employee from a non-compensable cause, unpaid compensation for permanent total disability, permanent partial disability, and hernia would survive to the "surviving dependents as the Commission may determine," and added that, if there were no such dependents, the unpaid compensation survived to the

employee's wife and to the employee's minor children if, at the time of the employee's death there was a legal obligation on his part to support his wife and, if not, to the minor children alone. The personal representative was removed as a default beneficiary. The other relevant change made by the 1947 law was to remove from the death benefit provision the presumption of dependency attaching to spouses and children and to provide that "[i]n all cases, questions of dependency, in whole or in part, shall be determined by the Commission in accordance with the facts in each particular case existent at the time of the injury resulting in death of such employee."

The 1945 and 1947 legislation put the law essentially into its present posture. The provisions dealing with both the survival of employee benefits and the right to death benefits remained in the same section—eventually § 36 of Article 101—until 1991, when, through the enactment of the Code Revision Labor and Employment Article, the long, convoluted § 36, which was then twelve printed pages in length, was mercifully split into several different sections. Former § 36 contained within it all of the provisions dealing with permanent total, temporary total, permanent partial, temporary partial, hernia, and death benefits, as well as the apportionment of benefits based on preexisting injury, vocational rehabilitation, and other miscellaneous provisions. The splitting of those provisions into different parts and sections, for purposes of clarity and more rational organization, now presents the laws on survival of employee benefits and death benefits in different parts of the article, as though they never had a spatial connection with one another.[3] As the legislative history indicates, however, that is not the case. When "surviving dependents" first received the right to unpaid benefits awarded to an employee,

---

**3.** The Labor and Employment Article put the provisions dealing with the various kinds of benefits, including temporary partial, temporary total, permanent partial, permanent total, hernia, and death benefits, into separate parts of subtitle 6—the subtitle on benefits. Among other things, that required the survival provision applicable to permanent partial, permanent total, and hernia benefits to be repeated three times—in §§ 9-632, 9-640, and 9-646.

that right was placed in the same section that already contained the right of surviving dependents to receive death benefits.

The Legislature left no direct clue as to why, in the 1945 and 1947 legislation, it substituted "surviving dependents" for the personal representative or whether it intended the "surviving dependents" for purposes of the survived benefits necessarily to be the same persons who would have their own claim for death benefits. Several fair inferences may be drawn, however. With respect to the substitution of dependents, spouses to whom an obligation of support was owed, and minor children for personal representatives, the Legislature most likely desired to curtail the continued prospect of unpaid benefits passing either through the employee's will or by intestacy to persons who were not actually (or in the case of minor children, presumably) dependent on the employee. Indeed, we can fathom no other explanation.

Discerning the legislative intent with respect to whether the "surviving dependents" under what is now § 9–632 were to be the same persons who would qualify as dependents under the death benefit provisions is not so easy. The Legislature had been careful to describe in some detail who qualified as a dependent for purposes of death benefits, and it was presumably aware of the many rulings of this Court, dating back to *Adleman* in 1917, enforcing the legislative direction that dependency for that purpose be determined based on the circumstances existing at the time of the accidental injury, not at the time of death. As we pointed out above, although the fact of dependency had to be determined based on circumstances existing at the time of the accident, the death benefit law always required that the claimant survive the deceased employee. Accordingly, a claimant for the death benefit had to be not just a dependent, but a "surviving dependent" to be eligible for the death benefit. With that knowledge, the Legislature used the term "surviving dependent," in the same section of the law, without any indication that it had different people in mind. It is true, of course, as respondent points out, that the right to recover death benefits and the right to a

continuation of employee benefits have always been treated as separate and independent rights, but that does not require that we ascribe a different meaning to the word "dependent," as used in the survival sections, at least without some positive indication that the Legislature meant for there to be a difference. We have long followed the rule that "[w]here the same language is used in different clauses of the constitution [or statute], upon the same or similar subjects, it must receive the same construction, unless some particular reason to the contrary can be signed." *Railroad Co. v. Lichtenberg,* 176 Md. 383, 392, 4 A.2d 734, *appeal dism., U.S. v. Baltimore & A R Co.,* 308 U.S. 525, 60 S.Ct. 297, 84 L.Ed. 444 (1939), citing *Roberts v. Gibson's Ex'r.,* 6 H. & J. 116, 124–25 (1823).

The concept of dependency would appear to be the same in both instances—an intent by the legislature that benefits payable upon the death of the covered employee go first to those persons who relied upon the employee for the basic necessities of life. Notwithstanding that a dependent is entitled to death benefits directly and independently if the employee dies from the compensable accidental injury and only vicariously if the employee dies of some other cause, there is no evidence to suggest that the Legislature intended for dependency in one situation to be determined differently from dependency in the other. Whether we conclude that dependency for purposes of § 9–632 is fixed as of the date of accident or as of the date of death, some people will be included as beneficiaries and some will be excluded. If we apply a constant standard—date of accident—a person in respondent's shoes will be excluded as a "surviving dependent" for purposes of both the death benefit and the survived benefit, because he or she was not dependent at the time of accident. If we apply a time-of-death standard for § 9–632, that person will be included, but one who was dependent on the employee at the time of accident but later lost that dependency will be excluded, even though, if the employee died of the compensable injury, the latter person would be eligible for the death benefit and the former would not. It is not, then a question of simply applying a liberal construction

to the law, to favor a beneficiary. Whichever construction is applied, there will be winners and losers. The only question is whether the Legislature intended for there to be consistency.

Wrestling with the fact that, under either construction, there will be winners and losers, the Court of Special Appeals attempted to create a world of only winners by construing the language in § 9–632(c) that the right survives to the surviving dependents "as the Commission may determine" as allowing the Commission, in each case, to fix either the time of accident or the time of death as the defining event. We find no warrant in the law for that approach. For one thing, it would not restrict the Commission to only the time of the accident or the time of death, but would permit it to fix any time in between, and to pick one time in one case and another time in another case, or even one time for one dependent and another time for other dependents. Keeping in mind that these determinations are made by individual Commissioners and not by the Commission as a collegial body, only uncertainty and the prospect of wide disparity, not easily correctable on judicial review, would flow from that approach. What the Commission may determine is whether a claimant was, in fact, wholly or partly dependent on the employee and, when there is more than one eligible claimant, whether and how the benefit should be divided and allocated. The Legislature has not authorized the Commission to set the basic legal standard, much less on an *ad hoc,* case-by-case basis.

The argument of respondent that it makes better sense to have dependency determined as of the time of the employee's death would seem to have greater force with respect to the death benefit which, as noted, treats the death as the compensable event. A compelling argument could be made that, because it is the death of the employee that triggers the right, only those persons dependent on the employee at the time of death should be eligible. Since 1914, however, the Legislature has chosen to use the date of accident as the determinative time. The right to survived benefits is not a direct right, but only a derivative one. It is the employee's right that survives, and the employee's right necessarily is fixed as of the date of

accident, not as of the time of death. Nor do we regard it as significant that the Legislature failed to engraft on to the survived benefit language all of the provisions set forth with respect to death benefits. There was really no need for it to do so, since an acceptable definition of "dependent" was already in the same section of the law.

In summary, we are unable to discern any evidence that the Legislature desired to have the term "dependent" mean one thing for purposes of the death benefit and another for purposes of the survived benefit, nor have we been able to determine any compelling reason why it would have wanted to have different standards apply.[4] Accordingly, we believe that dependency for purposes of § 9–632 is to be determined in accordance with the circumstances existing at the time of the accident, and, for that reason, we shall reverse the judgment of the Court of Special Appeals.

JUDGMENT OF COURT OF SPECIAL APPEALS RE-VERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE JUDGMENT OF CIR-CUIT COURT FOR BALTIMORE COUNTY AND RE-MAND TO THAT COURT WITH INSTRUCTIONS TO REVERSE ORDER OF WORKERS' COMPENSATION COMMISSION; COSTS IN THIS COURT AND COURT OF SPECIAL APPEALS TO BE PAID BY RESPON-DENT.

---

**4.** We do not suggest here that all provisions included within §§ 9–678—9–686 are applicable to the determination of dependency under § 9–632. We hold only that, in the event of an accidental injury, the Legislature intended, in both instances, for dependency to be deter-mined in accordance with the circumstances existing at the time of the accident.