## MARYLAND HOUSE OF CORRECTION
### ET AL. *v.* JENKINS
[No. 205, September Term, 1961.]

*Decided March 20, 1962.*

The cause was argued before HENDERSON, PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

*J. Howard Holzer* and *Philip T. McCusker, Special Attorneys,* with whom were *Thomas B. Finan, Attorney General,* and *Kenney, Gallagher & Ricciuti* on the brief, for appellants.

*Julius G. Maurer,* with whom was *S. Alfred Mund* on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court.

The question presented in this workmen's compensation case is whether the widow and children of an inmate of the Maryland House of Correction—who was accidentally killed while he was engaged as a day laborer outside of a correctional camp—were dependent on the prisoner at the time of death and as dependents entitled to compensation for his death.

Within the time allowed by law the claimant (Sarah J. Jenkins) for herself and on behalf of her children filed a claim for death benefits with the Workmen's Compensation Commission against the House of Correction as employer and the State Accident Fund as insurer. In due course the Commission found that the claimants were not dependent on the prisoner for support at the time of his death, and disallowed the claim. But, on appeal to the Superior Court of Baltimore City, a jury found that the claimants were dependent on the decedent. And the employer and insurer appealed to this Court.

At the trial in the lower court it was agreed and stipulated that the injury causing the death of the prisoner on January 23, 1959, arose out of and in the course of his employment; that he was covered by the insurance the State Accident Fund provided; that he was lawfully married to his wife at the time of death; that as a result of the marriage there were four children ranging in age from six to ten years; and that the prisoner had been sentenced on October 25, 1957, for a term of three years in the Penitentiary, but had been transferred to the House of Correction on May 11, 1958.

Other evidence produced at the trial showed that prior to his incarceration, the prisoner had been employed by the Bethlehem Steel Company and was then contributing from $25 to $35 per week toward the support of his wife and children in

addition to making monthly mortgage payments on a home he owned and in which his dependents lived. In addition to this the prisoner had also claimed an illegitimate child born prior to his marriage as a dependent in his income tax return for the year 1957.

After the incarceration of her husband, the wife applied to the welfare department for financial assistance. This was granted and was continued until the death of her husband, when she qualified for social security benefits. There was also evidence that the wife had worked several days a week at $5 a day as a domestic, but that she stopped working after the receipt of the first welfare payment.

The evidence is conflicting as to where the prisoner lived prior to his arrest. According to the widow he was living with her and the children and came home three or four nights a week, but in applying for welfare she had stated that they had been separated for over a year. And the prison records show that the prisoner had told prison authorities that he had separated from his wife in 1955 and had been living with a paramour. However, although she did not deny the illicit relationship, the paramour insisted that the prisoner had never contributed to her support.

The prisoner, in stating his proposed plans should he be paroled, told prison authorities that he planned to live with his paramour and that, if that was not acceptable, he intended to reside with his parents. However, the prisoner wrote letters to his wife in which he stated he missed her and the children, expressed his love and concern for all of them, particularly the children, and implied that he intended to resume supporting them when he was released. And she wrote to him occasionally, but she had never visited him as had the children and his father. The last letter to his wife, in much the same tone as previous ones, was written two days before his death. But he also wrote to the paramour and she to him. And the paramour had visited him while he was at the Penitentiary.

The prisoner earned $4 a month. On two occasions he sent small sums to persons outside the prison, but he had not sent anything to his wife or children or to the paramour. At

the time of his death there was $18.73 to his credit. This was turned over to his wife. The record shows that he would have been released on parole in about another year.

At the close of the case for the claimants, the employer and insurer, having offered no evidence on their own behalf, moved the court for a directed verdict on the issue of dependency, and when the motion was denied they requested the court to direct the jury to return a verdict in their favor on the submitted issue because the evidence was not sufficient to show that the widow and children were legally dependent on the deceased at the time of death within the meaning of the compensation law, and as grounds therefor stated (1) that the evidence was uncontradicted that the decedent had not contributed to the support of his wife and children while he was incarcerated and (2) that the evidence showed no reasonable probability that the decedent would support his wife and children upon his release from the penal institution. But the court again refused to rule that the claimants were not dependent on the decedent as a matter of law and submitted the case to the jury on an issue reading: "[w]ere the claimants or any of them dependent, either in whole or in part, upon the deceased at the time of his injury and death?" As we have already stated, the jury answered the issue in the affirmative.

In its charge to the jury—after a series of preliminary explanations as to the status of the prisoner as an employee, the presumption as to the correctness of the administrative finding, the burden on the claimants to override the presumption, and other pertinent matters — the court informed the jury that a dependent, within the meaning of the compensation law, is a person who relies, in whole or in part, on a workman for the reasonable necessities of life; one whom a workman by his acts has recognized as a dependent; and one for whom a workman has made material and substantial contributions of support. And, then, specifically instructed the jury that "[t]he only question [of fact] for you to determine is whether or not there was a reasonable probability that, on his release, the decedent would have contributed to the support of his wife and children."

Although stated in somewhat different terms in their brief, the contention of the employer and insurer is that the court erred when it denied the motion for a directed verdict and disregarded their request for an instruction to the effect that the prisoner was not supporting his wife and children at the time of his death and that the answer to the issue should be in the negative.

We disagree. The question of dependency in this case was clearly one of fact to be decided by the jury, and the "reasonable probability" instruction was proper.

Code (1957), Art. 101, § 36 (8) (d), as amended by Chapter 895 of the Acts of 1947, provides that "[i]n all cases, questions of dependency, in whole, or in part, shall be determined by the Commission in accordance with the facts in each particular case existent at the time of the injury resulting in the death of [the] employee." The obvious intent of the amendment was to remove the presumption of dependency in certain cases and to eliminate the necessity for finding a legal obligation to support a claimant. *Kendall v. Housing Authority,* 196 Md. 370, 76 A. 2d 767 (1950). See also *C. W. Wright v. Brannan,* 217 Md. 397, 142 A. 2d 574 (1958).

It is true, of course, as the statute directs and as was pointed out in *Havre de Grace Fireworks Co. v. Howe,* 206 Md. 158, 110 A. 2d 666 (1955), that the crucial date for determining the dependency question is that on which the employee sustained the injury that resulted in his death, but that does not mean that the temporary (as opposed to permanent) inability of an employee to support his wife and children has the inexorable effect of depriving them of compensation for his death merely because he was not actually contributing to their support at the time he was accidentally killed. If this were not so, then, in the case of most prisoners, the provisions of § 35 of Art. 101, stipulating that the dependents of a prisoner shall be entitled to compensation upon his death as the result of an accidental injury, would be meaningless. Here, the prisoner, who had no other income, earned only four dollars a month, a sum that was barely enough to supply his own personal needs, such as cigarettes, toilet items and other things which are necessary even in a prison.

This Court, in *State Industrial Accident Comm. v. Down-ton,* 135 Md. 412, 109 Atl. 63 (1919) and in *Harvey v. George J. Roche & Son,* 148 Md. 363, 129 Atl. 359 (1925), recognized the possibility that there could be a question of "reasonable probability" in some circumstances. And in the latter case, in which the former was cited, it was said (at p. 370) that "a question of probability would, accurately speaking, arise only when an interruption to regular support is to be considered" and that the question of "whether the interruption is only temporary, or means an end to support, is one of probability," but because a question of probability did not arise in that case, it was unnecessary to decide whether the instructions there were erroneous. See also *Meyler v. Mayor & C. C. of Baltimore,* 179 Md. 211, 17 A. 2d 762 (1941), where the phrase "reasonable probability" was used in connection with "an obligation to support."

In *C. W. Wright v. Brannan, supra,* after a lapse of more than a quarter of a century, we had another occasion to consider the question "of probability arising from interruption to regular support," but in that case a majority decided that there was "no basis for a determination that there was any reasonable probability of resumption of support in the foreseeable future as of the date of the injury."

Some of the courts in other jurisdictions have also considered questions as to whether there was probability of future support after there had been an interruption to actual support. In *Merrill v. Penasco Lumber Co.,* 204 Pac. 72 (N. M. 1922), the Court, in holding that actual dependency existed, said (at p. 73):

> "* * * just as the existence of the marital status does not of itself prove dependency, so the lack of actual support by the husband does not of itself negative dependency. The failure to support is only one circumstance for consideration. The reasons for it, the length of its continuance, the mutual attitude and means of the parties, the probable resumption of duty, and other similar matters may have a distinct bearing on the subject. If dependency were de-

termined only by the fact of contribution to support, a wife and children might be dependent one week and cease to be the next according to the caprice of the husband and father."

See also *In re Tocci,* 112 P. 2d 515 (N. M. 1941), in which the *Merrill* case was cited with approval. And see *La Salle County C. Coal Co. v. Industrial Comm.,* 190 N. E. 687 (Ill. 1934), involving the decedent's support of his father, where the Court pointed out (at p. 688) that "[d]ependency, once recognized and firmly established by regular contributions for support over a reasonable course of time, is not abruptly terminated by the temporary failure of the contributor to meet his obligations of support as they become due, in the absence of proof that the relationship has definitely ceased to exist by the action of one or both of the parties."

The function of this Court in a case such as this is to determine whether there was any evidence legally sufficient to be submitted to the jury. We think there was. There was evidence that the decedent had supported the claimants regularly prior to his incarceration. And there was also evidence that the decedent would probably resume supporting his wife and children after he had been released from prison.

Since there was evidence from which the jury could find that there was reasonable probability of the resumption of support in about a year or possibly less as of the date of the injury and death, we hold that the question of dependency was not a matter of law but one of fact to be decided by the jury. *Havre de Grace Fireworks Co. v. Howe, supra.*

The judgment will therefore be affirmed.

*Judgment affirmed; appellants to pay the costs.*