## MULLAN CONSTRUCTION COMPANY ET AL. *v.* DAY

[No. 95, September Term, 1958.]

582

*Decided January 21, 1959.*

The cause was argued before Brune, C. J., and Henderson, Prescott and Horney, JJ.

*Robert E. Coughlan, Jr.,* for appellants.

*William I. Gosnell,* with whom were *Nicholas & Gosnell* on the brief, for appellee.

Horney, J., delivered the opinion of the Court.

This is an appeal by the Mullan Construction Company (the employer) and the National Surety Corporation (the insurer) from a judgment entered by a court of law reversing a decision of the State Industrial Accident Commission (the Commission) [1] that Cora Day (the claimant), widow of Corbin Day (the husband or deceased), was partially but not totally dependent upon the deceased at the time of injury within the meaning of Code (1951) Art. 101, § 35 (8) (b) (d).[2]

The Commission heard the case and awarded the claimant $3000, the maximum compensation benefits under Section 35 (8) (b), *supra,* for partial dependency. The claimant appealed to the Baltimore City Court where the case was heard before a jury. At the close of the evidence, the court denied the instructions submitted on behalf of the employer and insurer for a directed verdict in their favor on the issues of whether the claimant was partially or totally dependent upon the deceased for support. The jury found that she was totally dependent.

The employer and insurer concede that the deceased sustained an accidental injury which arose out of and in the

---

1. Chapter 584 of the Acts of 1957, effective February 1, 1958, abolished the State Industrial Accident Commission and created and established in its place what is now the Workmen's Compensation Commission.

2. The comparable section in Article 101 of the 1957 Code is § 36.

course of his employment and which resulted in the death of the decedent, that the claimant is the only dependent, and that she is entitled to benefits as a partial dependent. The only dispute is whether the claimant was totally dependent upon the deceased for her support.

On the date of the injury, March 16, 1955, the deceased was working as a laborer. His pay averaged $59.60 per week gross. On the same date the claimant was working as a cutter at the Atlas Wiping Cloth Company. Except as hereinafter noted, she had been so employed for over fifteen years, presently earning $30 per week with a take-home pay of $28.50.

On January 29, 1955, the claimant became ill with pneumonia and did not work from that date until March 10, 1955. She worked on that day and the next day, which was a Friday. She did not work over the weekend, and on Monday she was ill and did not work. She returned and worked on Tuesday and Wednesday, which was the date of the injury of her husband, but she was not paid therefor until the following Friday.

Although they had been married in 1949, the claimant testified that she and her husband had never pooled their earnings. She used her money to buy things she needed around the house such as linens and dishcloths. Some of it was also used for church and carfare. And she bought small things for herself such as hose and gloves at a cost of less than ten dollars a week. She could not explain, however, what was done with the remainder of her weekly earnings, but stated that she spent the couple of dollars she had left over at the end of a week on herself. She did not have a savings account; nor did she own any bonds or other securities.

The claimant also testified that her husband made the payments on the house and paid for his lunches and carfare as well as for the food, fuel, telephone, clothes, insurance and medical bills for both. They were not paying installments on anything but the house, and they did not go to the moving pictures. Most of their free time was spent at church where her husband was a deacon.

The claimant's daughter-in-law testified that she took care of the claimant during her illness for which she was paid five or six dollars as a gratuity by the husband. She also testified that during this period the husband paid all of the household bills.

In this State the Workmen's Compensation Act does not define by express terms the meaning of "total" and "partial" dependency. Section 35 (8) (d), *supra,* provides:

> "[Q]uestions of dependency, in whole, or in part, shall be determined by the Commission in accordance with the facts * * * existent at the time of the injury resulting in death * * *."

Instead, as the statute provides, the Commission determines the status of the claimant in accordance with the facts in each case as of the date of the fatal injury. *Superior Builders, Inc. v. Brown,* 208 Md. 539, 119 A. 2d 376 (1956).

Generally, a "dependent," within the meaning of the statute, is one who relies in whole or in part upon the workman for the reasonable necessities of life at the time of the accidental injury. *C. W. Wright v. Brannan,* 217 Md. 397, 142 A. 2d 574 (1958). Generally, one who subsists entirely upon the earnings of a deceased employee is a total dependent, but a legal or moral obligation to support a person does not create dependency in the absence of actual support. *Mario Anello v. Dunn,* 217 Md. 177, 141 A. 2d 731 (1958). On the other hand, the courts do not demand that a claimant must show destitution in order to obtain an award as a total dependent. A claimant may receive temporary gratuitous services, occasional financial assistance or other minor benefits from sources other than the deceased workman but he must not have had a consequential source or means of maintenance in addition to what is received out of the earnings of the deceased. *Larkin v. Smith,* 183 Md. 274, 37 A. 2d 340 (1944) ; *Mario Anello v. Dunn, supra.*

It is well settled in this State that in each case where the evidence, or any inferences fairly deducible from it, is legally sufficient to support a rational conclusion of total dependency as opposed to the theory of a motion for a directed verdict

or a demurrer to the evidence, the issue should be submitted to the jury, or the court without a jury, as the case may be. However, when the facts are undisputed, and permit no inferences consistent with the existence of a supposed or asserted right, the existence of such right is an unmixed question of law for the court. See *Mario Anello v. Dunn, supra,* and cases therein cited.

In two Maryland decisions the facts were somewhat similar to the facts in the present case. In one, *Bethlehem-Fairfield Shipyard v. Rosenthal,* 185 Md. 416, 45 A. 2d 79 (1945), we held that the claimant was wholly dependent. In the other, *Mario Anello v. Dunn, supra,* we held that the claimant was only partially dependent.

In the *Rosenthal* case, which we think is clearly distinguishable from the instant case, the deceased and the claimant had been married in 1922. The claimant had never worked until June of 1943, having been supported during her entire married life by her husband. When the claimant's son entered the Navy, she took employment in a defense industry. She was worried and wanted to occupy her mind. In July of 1944, when the deceased was fatally injured, he had been earning an average of $47.45 per week and the claimant $30. She placed her earnings in a bank account with the earnings of her husband. Between $20 and $25 was saved each week after giving her son from $10 to $15. The Commission determined that the claimant was wholly dependent on the deceased worker. The jury also found total dependency, and we affirmed. There, the statute provided that a wife was presumed to be wholly dependent upon a deceased employee. That presumption was subsequently deleted from the statute. See *Havre de Grace Fireworks Co. v. Howe,* 206 Md. 158, 110 A. 2d 666 (1955). In the *Rosenthal* case the wife accounted for the disposition of the proceeds of her employment. Here, the claimant was vague and either could not or would not account for the disposition of her earnings other than claim that she spent it on herself. Finally, in the *Rosenthal* case, the claimant had worked only about thirteen months to "occupy her mind," but in the present case the claimant had

been working for more than fifteen years prior to the death of her husband.

We think the *Anello* case, *supra,* is controlling here. In that case the claimant had married the deceased in 1949. At the time of her husband's injury in 1956, she was employed as a sewing-machine operator. She earned $1604.51 in 1954 and $1957.40 in 1955. During the month of her husband's death she received average take-home pay of approximately $30 a week. Her husband had earned an average weekly wage of $90. The claimant admitted that she pooled her earnings with those of her husband and paid the household bills out of the total.

In the instant case, the claimant had take-home pay of $28.50 per week while the deceased averaged $59.60 gross each week. The claimant contends that the present case differs from the *Anello* case, *supra,* because she denied pooling her earnings with those of her husband. While it is true that the claimant steadfastly refrained from admitting that she and her husband had pooled their income, the use of the term "pooled" by the courts in compensation cases is but one of convenience to point out that the claimant used a part of his earnings to pay the common household expenses. Whether earnings are in fact pooled must depend upon the circumstances, and the inferences deducible therefrom, in each case. An anomalous situation would ensue if a claimant could acquire the status of a total dependent merely by disclaiming the use of his earnings in or about the home or its affairs. According to the testimony of the claimant in this case she spent less than ten dollars a week for incidentals plus a couple of dollars she had left over at the end of the week—a total of not more than twelve dollars—leaving approximately $16.50 a week unaccounted for, which she apparently kept in her pocketbook along with the $50 a week she received from her husband for the household bills. If she did not use the balance of her money to pay household bills, she must have used it to partially support herself. In any event, it is clear that no money was left over at the end of the week. How it was actually spent is not important under the circumstances in this case. On cross-examination she did admit that, if

a bill remained which "had to be paid" she "would take [her] own [money] and pay it." And, while she reiterated that she would use her money only "if it just had to be," she explained that fact by saying, "[w]e wasn't separate, we was together." The claimant should not be penalized for adhering to this commonplace concept of "togetherness," but in a case such as this where the earnings of the wife were substantial, where she did not subsist solely out of the earnings of her husband, and where she either could not or would not account for more than half of her net earnings, she cannot establish the status of a total dependent by merely claiming she did not pool her earnings with those of her husband.

The claimant also contends there is no evidence that she had earned any money after the onset of her illness on January 29, 1955, until after March 16, 1955, the date on which her husband was fatally injured. She had worked, however, on March 10, 11, 15 and 16, although she was not paid therefor until March 19. To support this contention she relies on *Meyler v. Mayor & City Council,* 179 Md. 211, 17 A. 2d 762 (1941), for the proposition that the rights of a claimant are fixed at the time of the injury, irrespective of what transpired subsequently or what had happened previously. The *Meyler* case, however, *did not hold* that courts cannot consider conditions which existed prior to the injury. It *did hold* that rights which become fixed as of the date of the injury cannot thereafter be affected by any subsequent change of conditions. There is no reason why testimony as to facts and circumstances existing prior to the time of injury may not be considered in order to ascertain the status of the parties as of that date. See, for example, the *Rosenthal* case, *supra,* in which we considered the fact that the claimant had only worked for a short time prior to the injury. In *Nolen v. Wortz Biscuit Co.,* 210 Ark. 446, 196 S. W. 2d 899, 901 (1946), it was said:

> "It is true * * * [our] Workmen's Compensation law says: 'All questions of dependency shall be determined as of the time of injury.' But that provision does not mean that the Commission should

refuse to consider evidence of conditions prior to the injury to ascertain the true situation as to dependency."

See also 99 C. J. S. *Workmen's Compensation* § 138; 58 Am. Jur. *Workmen's Compensation* § 166; and 2 Larson *Workmen's Compensation Law* § 64.50 (1952). Cf. *State v. Industrial Commission of Ohio,* 61 Ohio App. 51, 22 N. E. 2d 214 (1938).

As we have noted, the record shows (i) that the claimant, who had earned substantial wages prior to her illness, had either partially supported herself or contributed something toward the household expenses, and (ii) that the claimant had returned to work and was *actually* working on the day her husband was fatally injured. It is these facts—not the fact she had not been paid what she had earned in the four days she had worked after her illness—which are controlling.

For the reasons stated we hold that the trial court erred in refusing to grant the instructions for directed verdicts in favor of the employer and insurer on the two issues presented and in overruling their motion for a judgment n.o.v. Since the first instruction requested in effect conceded that the claimant was partially dependent, the court should have granted either the second instruction for a directed verdict on the question of total dependency or the motion for a judgment n.o.v. Either action would have affirmed the decision of the Commission.

> *Judgment reversed, and case remanded for the entry of a judgment n.o.v. in favor of employer and insurer on the question of total dependency, the appellee to pay the costs.*