979 A.2d 744

Larry HOLMES, Sr., et ux.

v.

WAL MART STORES, INC., et al.

No. 0036, Sept. Term, 2008.

Court of Special Appeals of Maryland.

Sept. 2, 2009.

Jeff Messing of Baltimore, for appellant.

Richard W. Scheiner (Mary M. Wiethorn, Semmes, Bowen & Semmes on the brief), Baltimore, for appellee.

Panel:JAMES R. EYLER, GRAEFF, KEHOE, JJ.

KEHOE, J.

The issue before us is whether MD.CODE ANN. LAB. & EMPL. § 9-632 (1991, 2008 Repl.Vol.) entitles appellant, Larry D. Holmes, Sr., to pursue the claim of his deceased spouse, Patricia L. Holmes, for permanent disability benefits under the Maryland Workers' Compensation Act (the "Act")[1] that might have been awarded to her had she not died prior to entry of an award.

## BACKGROUND

The facts of the case are undisputed.

On November 3, 1999, Mrs. Holmes suffered an injury in the course of her employment with Wal Mart Stores, Inc., one of the appellees.[2] On December 9, 1999, she filed a claim for compensation with the Workers' Compensation Commission (the "Commission"). The Commission awarded Mrs. Holmes temporary total disability benefits. On or about November 28, 2006, Mrs. Holmes attained the maximum amount of medical improvement from her work-related injuries; in the

---

1. Prior to 1991, the Act was found in Article 101 of the Code; by Chapter 8 of the Acts of 1991, the General Assembly recodified the Act as Title 9 of the Labor & Employment Article. Unless otherwise noted, all statutory references herein are to the Act.

2. The other appellee is American Home Insurance Company.

normal course of events, she would have applied to the Commission for an award of either permanent partial or permanent total disability benefits. However, before she could do so, Mrs. Holmes died, on December 4, 2006, from causes not related to her injuries.

On May 7, 2007, Mrs. Holmes' attorney filed a post-mortem issue seeking, *inter alia,* permanent disability benefits.

On September 19, 2007, the Commission held a hearing on the nature and extent of Mrs. Holmes' permanent disability. At the hearing, both parties agreed that the appellant's right, if any, to pursue the claim of his deceased spouse is controlled by § 9–632 of the Act, which provides in pertinent part:

(b) *In general.*—If a covered employee dies from a cause that is not compensable under this title, the right to compensation that is payable under this Part IV of this subtitle and unpaid on the date of death survives in accordance with this section.

(c) *Surviving dependents.*—If there are surviving dependents of the covered employee, the right to compensation survives to the surviving dependents as the Commission may determine.

(d) *No surviving dependents; obligation to support surviving spouse.*—If there are no surviving dependents of the covered employee and, on the date of death, the covered employee had a legal obligation to support a surviving spouse, the right to compensation survives jointly to:

(1) the surviving spouse of the covered employee; and

(2) the surviving minor children of the covered employee.

(e) *No surviving dependents or obligation to support surviving spouse.*—If there are no surviving dependents and, on the date of death, the covered employee did not have a legal obligation to support a surviving spouse, the right to compensation survives only to the surviving minor children of the covered employee.

Appellant was the only witness at the hearing. He testified without contradiction that he and Mrs. Holmes had been

married in 1969, that they separated some time thereafter, but that they had reconciled and lived together at their residence as husband and wife for approximately three years prior to Mrs. Holmes' death. He stated that, during that period of time, he and his wife combined his income with her workers' compensation benefits to meet their living expenses. Appellant testified that his monthly income was approximately $1,100 and that Mrs. Holmes' benefits amounted to $330 per week. Finally, Mr. Holmes testified that, at the time of her death, Mrs. Holmes had no source of income, was in very poor health, and was unable to work.

The parties stipulated to the Commission that appellant was not a "dependent" of Mrs. Holmes for the purposes of § 9–632(c) [3] and that Mrs. Holmes had no surviving minor children. Since appellant's contention that he was entitled to pursue his late wife's claim was based solely upon § 9–632(d), the issue before the Commission was whether appellant had demonstrated that Mrs. Holmes had a legal obligation to support him at the time of her death.

Appellant argued to the Commission that his late spouse had a legal obligation to support him at the time of her death based upon Maryland's criminal non-support statute, MD.CODE ANN. FAM. LAW § 10–201 (1984, 2006 Repl.Vol.) [4] Appellant contended that Maryland recognizes a general obligation of spouses to support one another. For their part, appellees asserted that the term "legal obligation to support . . ." was intended by the legislature to be limited to court-ordered

---

**3.** For the purposes of § 9–632(c), dependency is determined as of the date of the accident. *Meadowood v. Keller*, 353 Md. 171, 187, 725 A.2d 563 (1999).

**4.** The Family Law Article will be referred to hereafter as "F.L."
Section 10–201 provides in pertinent part:
§ 10–201. Nonsupport of spouse prohibited; penalties
(a) *In general.*—A spouse may not willfully fail to provide for the support of the other spouse, without just cause.
(b) *Penalties.*—An individual who violates this section is guilty of a misdemeanor and on conviction is subject to a fine not exceeding $ 100 or imprisonment not exceeding 3 years or both.

alimony or support payable pursuant to a separation agreement or other contract. Appellees contended that any other interpretation of the term would render other portions of § 9–632(d) superfluous:

Had the legislature intended for the right of survival to flow to a surviving spouse automatically under subsection[ ](d), there would be no need to include the language mandating a legal obligation to support the surviving spouse at the time of death. The legislature could have merely stated that if there are no surviving dependents of the covered employee, the right of compensation survives jointly to 1) the surviving spouse and 2) the surviving minor children.

The Commission determined that any right to further benefits did not survive Mrs. Holmes' death. The Commission's decision stated that "insufficient evidence was presented to establish that the claimant [i.e. Mrs. Holmes] had a legal obligation to support her surviving spouse. . . . Therefore, the right to compensation does not survive in this claim; and the issue of permanency is moot."

Appellant filed a timely petition for judicial review. The parties filed cross-motions for summary judgment. The arguments to the circuit court were, in essence, elaborations of the parties' respective contentions to the Commission. In rendering its decision, the circuit court characterized F.L. § 10–201 as pertaining only to "really criminal non-support issues" and stated:

So I think it's a very interesting legal issue, I think it's a very close legal issue. But, unfortunately, there are no cases exactly on point.

But having considered the provisions of the—or the provisions of the Code as well as that case,[5] the Court will conclude in this case that pursuant to 9–632 that Mrs. Holmes did not have an obligation to—a legal obligation to support her husband.

---

**5.** The transcript indicates that the circuit court was referring to *Mullan Construction Co. v. Day*, 218 Md. 581, 589, 147 A.2d 756 (1959).

Accordingly, the circuit court denied appellant's motion and granted the motion of appellee, thus affirming the decision of the Commission.

Appellant filed a timely appeal to this Court.

## QUESTIONS PRESENTED

Appellant presents two issues in his brief, which we have consolidated and reworded as follows:

Did the circuit court err in affirming the decision of the Maryland Workers' Compensation Commission that Patricia L. Holmes' right to compensation did not survive her death because she did not have a "legal obligation to support a surviving spouse" on the date of her death? [6]

For the reasons set forth in this opinion, we hold that § 9–632(d) provides that a deceased worker's right to permanent partial disability benefits survives to his or her spouse unless the surviving spouse has agreed to or has been adjudicated to have given up his or her right of support.

### Standard of Review

 Section 9–745(b) of the Act provides that decisions of the Commission are presumptively correct on appeal and that

---

6. Appellant's issues were:
 1. Did the circuit court err in deciding Patricia L. Holmes, claimant before the Maryland Workers' Compensation Commission who died on December 4, 2006 from causes unrelated to her work-related accidental injuries sustained on November 3, 1999, did not have a "legal obligation to support a surviving spouse [Larry Holmes, Sr.]" on the date of death, as required by § 9–632(d) of the Labor and Employment Article, Annotated Code of Maryland, despite their being married, living together, and pooling their incomes and paying their joint bills on the date of Mrs. Holmes' death?
 2. Did the circuit court err in granting appellee's motion for summary judgment, denying appellant's motion for summary judgment, and affirming the Workers' Compensation Commission's order dated October 3, 2007?
 Appellees framed the issues before this Court as:
 Did the circuit court correctly deny appellant's motion for summary judgment and correctly grant appellees' motion for summary judgment, thereby upholding the decision of the Workers' Compensation Commission?

a party challenging a decision of the Commission has the burden of proof to demonstrate error. However, as we recently noted, the presumption of correctness afforded to decisions of the Commission extends to questions of fact but not of law. *Simmons v. Comfort Suites Hotel,* 185 Md.App. 203, 211, 968 A.2d 1123 (2009) (citing *Beyer v. Decker,* 159 Md. 289, 291, 150 A. 804 (1930), *Board of Education v. Spradlin,* 161 Md.App. 155, 173, 867 A.2d 370 (2005), and *Symons v. R.D. Grier & Sons Co.,* 10 Md.App. 498, 500, 271 A.2d 398 (1970)).

The circuit court granted summary judgment on the basis that, in light of the uncontested facts, Mrs. Holmes' right to compensation did not devolve upon appellant pursuant to § 9–632. Review of a decision to grant summary judgment is *de novo.* *O'Connor v. Baltimore County,* 382 Md. 102, 110, 854 A.2d 1191 (2004); *Hines v. French,* 157 Md.App. 536, 549–50, 852 A.2d 1047 (2004).

■ In reaching its decision, the circuit court interpreted and applied both § 9–632 and F.L. § 10–201. When an appellate court reviews a trial court's "interpretation and application of Maryland constitutional, statutory or case law, [the appellate court] must determine whether the trial court's conclusions are 'legally correct' under a *de novo* standard of review." *Schisler v. State,* 394 Md. 519, 535, 907 A.2d 175 (2006) (citing *Garfink v. Cloisters at Charles, Inc.,* 392 Md. 374, 383, 897 A.2d 206 (2006); *Gray v. State,* 388 Md. 366, 374–75, 879 A.2d 1064 (2005); *Nesbit v. GEICO,* 382 Md. 65, 72, 854 A.2d 879 (2004); and *Walter v. Gunter,* 367 Md. 386, 392, 788 A.2d 609 (2002)).

## The Parties' Contentions

Since appellant conceded that he was not dependant upon Mrs. Holmes when she was injured, his right to enforce her claim for permanent disability benefits rests upon § 9–632(d) of the Act. Appellant argues that the "plain language" of the statute provides that when a claimant who is under a legal obligation to support a surviving spouse dies, her claim survives to the spouse and the claimant's minor children, if any.

Since the Act does not provide a definition of "a legal obligation to support a surviving spouse," appellant looks to F.L. § 10–201. In his brief, he states:

Section 10–201(a) of the Family Law Article ... states: 'A spouse may not willfully fail to provide for the support of the other spouse, without just cause.' Section 10–201(b) provides that a violation of subsection (a) is a misdemeanor. Hence, if the willful failure to provide spousal support is a crime, then it is a 'legal obligation' for a spouse to provide for the support of the other spouse, if the spouse is capable of providing support.

Appellant cites *Pitsenberger v. Pitsenberger*, 287 Md. 20, 24, 410 A.2d 1052 (1980), and *Cruickshank–Wallace v. County Banking and Trust Co.*, 165 Md.App. 300, 333, 885 A.2d 403 (2005), as support for his position that spouses in Maryland have a legal obligation to support one another. He concludes:

The plain language of the statute *sub judice*, 'legal obligation to support a surviving spouse,' therefore must be construed to include the existing obligation each spouse has to support the other in a marriage, unless modified by proper agreement between the spouses or by a court order, as reflected both in legislative policy and by common sense. Furthermore, if the plain language of the statute is given any other meaning other than the plain, clear and unambiguous meaning stated above, thereby denying the existence of the basic legal mutual support obligation of spouses as a result of marriage, then the illogical and absurd result would be a separating/divorcing spouse claiming that he/she does not have a "legal obligation" to provide any support since he/she never had such a "legal obligation" to provide support during the marriage. Construing "legal obligation to support a surviving spouse" in a way that excludes the basic spousal obligation of one spouse to support the other, as Appellee urges, would have an unintended legal effect and consequence.

Appellees argue that the term "support," when used in reference to the legal obligations to provide the same, "tradi-

tionally means those monetary amounts legally required to be paid under a judgment, decree, or order issued by a court . . . for the support and maintenance of another." Since there was no evidence that Mrs. Holmes was a party to any agreement requiring her to pay support to her husband and since there was no court order requiring her to do so, appellees argue that she was under no legal obligation to support appellant at the time of her death.

Appellees note that, at common law, a husband was legally obligated to support his wife at a level suitable to her station in life, but they contend that this obligation was terminated by the Court of Appeals in *Condore v. Prince George's County*, 289 Md. 516, 532–33, 425 A.2d 1011 (1981). They point out that in *Condore*, the Court of Appeals stated that the General Assembly had the authority to enact a statute creating a reciprocal liability for necessaries but that the legislature has declined to do so. Equating (although not explicitly) the doctrine of necessaries with an obligation to support a spouse, appellees suggest that the legislature's failure to enact a statute providing for a reciprocal version of the common law doctrine of necessaries indicates that there is no inherent obligation of spousal support.

Appellees argue that appellant's reliance upon F.L. § 10–201 is erroneous, as that statute is "really a criminal non-support statute intended to criminalize voluntary impoverishment," which does not create a mutual, affirmative obligation. They contend that "there is no legislative history to support [a]ppellant's position that the General Assembly intended to have compensation benefits survive to a surviving spouse under § 9–632(d) solely by virtue of marriage itself."

## DISCUSSION

■ Since there are no disputes of material fact in this case, our efforts are focused upon the proper construction and application of § 9–632(d). In *Whack v. State*, 338 Md. 665, 672, 659 A.2d 1347 (1995), the Court of Appeals explained that the goal of a court interpreting a statute is to

ascertain and effectuate legislative intent. *See, e.g., Jones v. State,* 336 Md. 255, 260, 647 A.2d 1204 (1994); *Mustafa v. State,* 323 Md. 65, 73, 591 A.2d 481 (1991). We first examine the primary source of legislative intent, the words of the statute, giving them their ordinary and natural meaning. *See, e.g., Parrison v. State,* 335 Md. 554, 559, 644 A.2d 537 (1994); *Harris v. State,* 331 Md. 137, 145, 626 A.2d 946 (1993); *Richmond v. State,* 326 Md. 257, 262, 604 A.2d 483 (1992). If the meaning of the language is unclear or ambiguous, "we must consider 'not only the literal or usual meaning of the words, but their meaning and effect in light of the setting, the objectives and purpose of the enactment,' in our attempt to discern the construction that will best further the legislative objectives or goals." *Gargliano v. State,* 334 Md. 428, 436, 639 A.2d 675 (1994) (quoting *Tucker v. Fireman's Fund Ins. Co.,* 308 Md. 69, 75, 517 A.2d 730 (1986)).

■ Our first step is to determine whether the phrase "legal obligation to support a surviving spouse" is ambiguous. We conclude that it is. Statutory language is ambiguous when it is "reasonably capable of more than one meaning." *Liverpool v. Baltimore Diamond Exchange,* 318 (2001) (citing *Webster v. State,* 359 Md. 465, 480, 754 A.2d 1004 (2000)). The Act does not define "legal obligation." Appellant argues that the phrase "legal obligation to support a surviving spouse" was intended to embrace all married persons except for those who, by contract or court order, are relieved of the obligation of spousal support. Appellee contends that the statutory language was intended to extend only to those married persons who are obligated by contract or court order to provide for a spouse's support. Section 9–632, at least arguably, supports both interpretations.[7]

---

7. Like the circuit court, we have found no case law interpreting § 9–632(d) or any of its statutory predecessors. The current edition of Black's Law Dictionary does not attempt to define the term "legal obligation." BLACK'S LAW DICTIONARY (9th ed.2009). The ordinary meaning of "legal obligation," according to a prior edition of Black's Law Dictionary, is "[a] duty imposed by law . . ." BLACK'S LAW DICTIONARY, 806

In light of the statute's ambiguity, we turn to the legislative history of § 9–632 to consider the context in which the statute was enacted in order " 'to discern the construction that will best further the legislative objectives or goals.' " *Gargliano v. State,* 334 Md. at 436, 639 A.2d 675 (quoting *Tucker v. Fireman's Ins. Co.,* 308 Md. at 75, 517 A.2d 730). In so doing, we bear in mind that the Act is remedial. While the Act is not intended to "enrich persons who were strangers to the injured party and who were not directly affected by his loss of earning capacity," *Cambridge Mfg. Co. v. Johnson,* 160 Md. 248, 253, 153 A. 283 (1930), *accord Hood v. Alltrista Corp.,* 143 Md.App. 124, 132, 792 A.2d 1179 (2002), if we determine that appellant is in a class intended to be benefitted by the Act, any ambiguities are to be liberally construed in his favor. *Bowen v. Smith,* 342 Md. 449, 454, 677 A.2d 81 (1996); *Ankney v. Franch,* 103 Md.App. 83, 105, 652 A.2d 1138 (1995), *rev'd on other grounds,* 341 Md. 350, 670 A.2d 951 (1996).

## I.

### *Legislative History*

The legislative history of § 9–632 was traced by Judge Wilner for the Court of Appeals in *Meadowood v. Keller,* 353 Md. at 173–84, 725 A.2d 563. The Court began its analysis by noting that, in its current form, the Act:

> provides for benefits for a number of different kinds of disabilities arising from job-related injuries and diseases, among which are weekly monetary benefits for temporary disability (both partial and total), permanent disability (both partial and total), hernia, and death. Benefits for disability and hernia are awarded to the injured employee; by virtue of §§ 9–632, 9–640, and 9–646, however, the right to collect those benefits survives if the employee dies before they are paid in full from a cause that is not itself compensable under the Act. In that event, the remaining benefits payable under

(5th ed.1979). The circular nature of this definition is of no assistance in resolving the issues in this case.

the award are paid to the employee's surviving dependents or, if there are no such dependents, to other persons designated in those sections. Death benefits obviously cannot be awarded to the employee but are instead awarded to persons who were dependent on the deceased employee, in accordance with §§ 9–678 through 9–686.

*Id.* at 173–74, 725 A.2d 563.

The Court stated that, while the initial version of the Act "provide[d] a death benefit for dependents of employees who died as the result of a compensable accident":

> The initial workers' compensation law (1914 Md. Laws, ch. 800) did not contain a survival provision with respect to the various disability benefits payable to employees. That omission was consistent with the general rule noted by Professor Larson that a workers' compensation award "is a personal one, based upon the employee's need for a substitute for his lost wages and earning capacity." 4 LARSON'S WORKERS' COMPENSATION LAW, § 58.42 (1998). As we pointed out in *Cambridge Mfg. Co. v. Johnson,* 160 Md. 248, 253, 153 A. 283 (1931), it was not the intent of the 1914 Legislature "to enrich persons who were strangers to the injured party and who were not directly affected by his loss of earning capacity" or "to create an insurance to the injured party, which upon his death would form a part of his estate."

*Id.* at 178, 725 A.2d 563.

The General Assembly addressed the issue of the survival of claims for benefits for hernias and disabilities several times in the period between 1914 and 1947. *Id.* at 178–84, 725 A.2d 563. We will summarize the changes pertinent to the issue before us.

By Chapter 456 of the Laws of 1920, the General Assembly amended the Act to provide for survival of the right to collect benefits for permanent partial disability upon the death of the claimant. In contrast to the death benefits, which were then and are now payable only to dependents, the benefits survived to the deceased worker's estate. 1920 Md. Laws 772. The

notion that a right to benefits would survive to a decedent's estate, and thus potentially to his creditors, was inconsistent with the conceptual underpinnings of the Act and the Court of Appeals gave the statutory provision an extremely narrow construction in *Cambridge Mfg. Co. v. Johnson*, 160 Md. at 255–56, 153 A. 283 (holding that the survival provision did not extend to permanent total disability claims).

The legislature revisited the issue of survival in 1945 when it enacted Chapters 336 and 462 of the Acts of 1945. Between them, the two statutes provided for the survival of unpaid permanent total disability benefits, extended the survival provision to hernia benefits and provided that a deceased claimant's dependants, as opposed to the claimant's estate, were the primary beneficiaries of the survival provisions. 1945 Md. Laws 303, 456.

Chapter 895 of the Laws of 1947 was the next pertinent amendment to the Act. Chapter 895 eliminated a rebuttable presumption in the Act that wives, children and other close family members were dependent upon the deceased worker for purposes of determining their eligibility to share in a death benefit. *Havre De Grace Fireworks Co. v. Howe*, 206 Md. 158, 162, 110 A.2d 666 (1955). In addition, while Chapter 895 maintained the provision that the survival benefits would be payable primarily to dependants of the deceased employee, it eliminated the provision that the deceased employee's estate would be the secondary beneficiary and instead provided that the benefits would be payable to the decedent's spouse and surviving minor children, subject to certain limitations:

If any employee dies from any cause or causes not compensable under this Article, the right to any compensation payable [for claims arising from permanent total disabilities, permanent partial disabilities or hernias] shall survive to his surviving dependents as the Commission may determine, if there be such surviving dependents, and if there be none such, then to his wife and children under twenty-one years of age *if there was, at the time of his death, a legal obligation on the part of said employee to support his wife,*

and if there was no such obligation, then to his children under the age of twenty-one, if any, alone.

1947 Md. Laws 2130. (Emphasis added.) As Judge Wilner explained:

The 1945 and 1947 legislation put the law essentially into its present posture. The provisions dealing with both the survival of employee benefits and the right to death benefits remained in the same section—eventually § 36 of Article 101—until 1991, when, through the enactment of the Code Revision [of the] Labor and Employment Article, the long, convoluted § 36, which was then twelve printed pages in length, was mercifully split into several different sections.

*Meadowood,* 353 Md. at 183, 725 A.2d 563.

One of former § 36's progeny is § 9–632 of the current Act.[8] While the language of the current § 9–632 is gender neutral,[9] it is otherwise substantively the same as that of former § 36 after the 1947 amendments. Thus our inquiry shifts to whether we can discern what the legislature intended when it used the phrase "a legal obligation on the part of said employee to support his wife" in the 1947 Act. In order to do so, we will review circumstances and case law contemporaneous to the

8. The current Act's survival provisions for permanent total disability, § 9–640, and hernias, § 9–646, are identical to § 9–632. *Meadowood,* 353 Md. at 174, 725 A.2d 563.

9. In the session immediately following ratification of the Maryland Equal Rights Amendment (Article 46 of the Maryland Declaration of Rights), the legislature enacted Chapter 218 of the Laws of 1973. The preamble to that act recited that it was passed "to make the provisions of [Section 36] relating to payment of compensation to wives upon the death of an employee applicable to a spouse of either sex." Volume I 1973 Md. Laws 580. The act substituted the words: "legal obligation to support his or her spouse" for the phrase "legal obligation to support his wife" in the subsection of § 36 pertaining to permanent total disabilities. However, despite the language of the preamble, chapter 580 did not modify the corresponding language of Section 36 pertaining to permanent partial disabilities. We can only assume that this was an oversight on the legislature's part. The provisions of the Act pertaining to the survival of claims for permanent partial disabilities did not become gender neutral until the Act was recodified as Title 9 of the Labor and Employment Article in 1991 by Chapter 8 of the Laws of 1991.

enactment of the legislative act in question. *Liverpool v. Baltimore Diamond Exchange,* 369 Md. at 317–18, 799 A.2d 1264 (citing *Webster v. State,* 359 Md. at 480, 754 A.2d 1004, and *Lewis v. State,* 348 Md. 648, 653, 705 A.2d 1128 (1998)).

### *The Common Law Obligation of a Husband to Support his Spouse*

In *Condore v. Prince George's County,* 289 Md. 516, 425 A.2d 1011 (1981), the Court of Appeals stated:

Under the common law of Maryland, prior to the adoption of the ERA, the husband had a legal duty to supply his wife with necessaries suitable to their station in life, but the wife had no corresponding obligation to support her husband, or supply him with necessaries, even if she had the financial means to do so. *Ewell v. State,* 207 Md. 288, 114 A.2d 66 (1955); *Coastal Tank Lines, Inc. v. Canoles,* 207 Md. 37, 113 A.2d 82 (1955); *Stonesifer v. Shriver,* 100 Md. 24, 59 A. 139 (1904).

*Id.* at 520–21, 425 A.2d 1011.

The common law "doctrine of necessaries" authorized a wife who was not supported by her husband to enter into contracts with third parties for necessaries, which contracts were enforceable against the husband. *McFerren v. Goldsmith–Stern Co.,* 137 Md. 573, 578–79, 113 A. 107 (1921). " 'Necessaries' were items 'suitable to [the wife's] situation and [the husband's] circumstances in life.' " *Cruickshank–Wallace v. County Banking,* 165 Md.App. at 324, 885 A.2d 403 (quoting *Vaccarino v. Cozzubo,* 181 Md. 614, 617, 31 A.2d 316 (1943)). The doctrine of necessaries was "an enforcement mechanism for the husband's duty to support his wife." *Cruickshank–Wallace, supra,* 165 Md.App. at 324, 885 A.2d 403. " 'At common law, failure by the husband to support his wife was not a crime. The husband had an obligation of support, which was to furnish necessaries to his wife. If he did not, her remedy was to purchase the necessaries on his credit.' " *Id.,* (quoting *Ewell v. State,* 207 Md. 288, 292, 114 A.2d 66 (1955)); *accord Dudley v. Montgomery Ward & Co.,* 255 Md. 247, 251, 257 A.2d 437 (1969) (citing *McFerren v. Goldsmith–Stern Co.,*

*supra,* 137 Md. at 578, 113 A. 107 (when husband fails to support wife, wife becomes his implied agent to pledge his credit.))

A husband's common law duty to support his wife was not absolute. In *Dudley v. Montgomery Ward, supra,* the Court of Appeals explained:

> Generally, a husband has a duty to support his wife and if he fails to do so will be liable to pay one who furnishes the wife necessaries even though the couple are living apart voluntarily or without the fault of the wife. We need not discuss or decide the theories variously relied on to impose this liability on the husband. One view—apparently the Maryland view, *see McFerren v. Goldsmith–Stern Co.,* 137 Md. 573, 113 A. 107—is that the wife becomes an agent of the husband to pledge his credit. . . .

> \* \* \* \* \* \*

> Whatever its sound basis, this liability of the husband arises and continues by reason of the marital tie, *McFerren v. Goldsmith–Stern Co., supra; Winchester v. Winchester,* 138 Md. 95, 113 A. 584. When that tie is severed by a court or when the wife misbehaves to a point which would permit the husband to obtain its severance, his obligation to pay for supplied necessaries terminates completely. *Kerner v. Eastern Hospital,* 210 Md. 375, 379, 381–82, 123 A.2d 333, flatly so held in a recognition of and obedience to the long and well established rule of law to that effect.

255 Md. at 251–52, 257 A.2d 437. (Footnote and some citations omitted.)

We turn again to the pertinent provisions of the Act. The 1947 amendments provided that a deceased worker's right to benefits:

> shall survive to his surviving dependents as the Commission may determine, if there be such surviving dependents, and if there be none such, then to his wife and children under twenty-one years of age if there was, at the time of his death, a legal obligation on the part of said employee to

support his wife, and if there was no such obligation, then to his children under the age of twenty-one, if any, alone. 1947 Md. Laws 2130. By 1947, it was clearly established that a deceased worker's survivors would be considered dependents only if they actually relied in whole or in part upon the deceased worker for support, *e.g., Meyler v. Baltimore,* 179 Md. 211, 215, 17 A.2d 762 (1941); *State Ind. Acc. Com. v. Downton,* 135 Md. 412, 416, 109 A. 63 (1919). A legal obligation to support, in the absence of actual support, did not constitute dependency for the purposes of the Act. *Harvey v. Roche & Son,* 148 Md. 363, 369–70, 129 A. 359 (1925); *Downton,* 135 Md. at 416, 109 A. 63.

Against this backdrop, the purpose of the 1947 amendments to the Act becomes clear. The General Assembly intended to protect three potentially overlapping classes of beneficiaries, i.e. dependants, wives, and minor children, and to prioritize their respective claims. If a worker supported his wife, she would be his dependant and her eligibility for benefits would be determined by what is now § 9–632(c). If he failed to support his wife, regardless of his legal obligation to do so, she was not his dependant. What is now § 9–632(d) provided that the right to benefits would survive to her unless her own misconduct had relieved her husband of the obligation of support. This interpretation is consistent with what was then § 42 of the Act, which prohibited a wife who had deserted her husband from receiving a death benefit.[10]

When the statutory predecessor to § 9–632(d) was enacted in 1947, Maryland law recognized that husbands generally had an affirmative, enforceable legal obligation to support their wives, an obligation that arose "by reason of the marital tie." *Dudley v. Montgomery Ward, supra,* 255 Md. at 249, 257 A.2d 437. We conclude that, when the General Assembly used the term "a legal obligation on the part of said employee to

---

**10.** This provision, in one form or another, had long been part of the Act and originated at a time when a wife enjoyed a rebuttable presumption of dependency. *See Harvey v. Roche & Son,* 148 Md. at 368–69, 129 A. 359. It survives today as § 9–680(a).

support his wife," it intended to describe this duty, as opposed to a specific requirement imposed by court order or written agreement.[11]

We now consider whether changes to the law since 1947, specifically, Maryland's adoption of the Equal Rights Amendment, should cause us to construe the statutory language differently today.

### The Equal Rights Amendment and Subsequent Developments

■ On November 7, 1972, the voters of this State ratified Article 46 of the Maryland Declaration of Rights, which provides "Equality of rights under the law shall not be abridged or denied because of sex." Appellees contend that the concept of a unilateral obligation of a husband to support his wife is inconsistent with the Equal Rights Amendment and that this obligation was abolished by *Condore v. Prince George's County*, 289 Md. at 530, 425 A.2d 1011. Appellees read *Condore* too broadly.

*Condore* was an appeal of a judgment entered against a widow for medical bills associated with her husband's last illness. At that time, the doctrine of necessaries was codified as Article 45, § 21. The plaintiff in the case, Prince George's County, took the position at trial that the Equal Rights Amendment "modified the existing common law of Maryland to impose upon wives a duty to support husbands mirroring the obligations of husbands to support their wives." *Id.* at

---

11. Since 1947, several cases, including *Mullan Construction Co. v. Day, supra,* 218 Md. 581, 586, 147 A.2d 756; *Mario Anello & Sons, Inc. v. Dunn,* 217 Md. 177, 180, 141 A.2d 731 (1958); *Havre De Grace Fireworks Co. v. Howe,* 206 Md. 158, 164, 110 A.2d 666 (1955); and *Toadvine v. Luffman,* 14 Md.App. 333, 336, 286 A.2d 790 (1972) utilized the term "legal or moral obligation to support" in analyzing questions pertaining to death benefit issues. None of these cases involved deceased employees who were under a specific court order of support or who were parties to written agreements for support. Thus the Court of Appeals and this Court appear to have equated the term "legal obligation to support" with an obligation to support a wife or child arising out of the marital or parental status.

519, 425 A.2d 1011. The Court of Appeals stated that the circuit court held that Maryland's ERA

expanded the 'equal rights concept' to require acceptance by women of 'the burdens as well as the benefits of such expansion.' In granting summary judgment for the County, the [circuit] court said:

'[I]n Maryland at the present time the wife is as responsible for her husband's necessities, such as medical expenses, as would the husband be responsible for the wife's necessities . . . . .'

*Id.* at 520, 425 A.2d 1011.

After reviewing authority from Maryland and other jurisdictions, the Court of Appeals stated:

In view of the principles espoused in these cases, we think the common law doctrine of necessaries is predicated upon a sex-based classification which is unconstitutional under the ERA.

*Id.* at 530, 425 A.2d 1011.

The Court of Appeals then considered *Jersey Shore Medical Center-Fitkin Hospital v. Estate of Baum*, 84 N.J. 137, 417 A.2d 1003 (1980). In that case, the Supreme Court of New Jersey held that New Jersey's version of the doctrine of necessaries violated the equal protection clause of the Fourteenth Amendment and an analogous provision of the New Jersey state constitution. The New Jersey court considered a variety of possible remedies before settling upon the creation of a new cause of action, on a prospective basis, that one spouse would be liable for the obligations of the other for necessaries to the extent that the assets of the spouse who incurred the debt were insufficient to satisfy it. *Condore*, 289 Md. at 529, 425 A.2d 1011. Instead of attempting to fashion a new common law remedy imposing liability upon wives for their husband's necessaries, the Court deferred to the legislative branch:

[What] best serves the societal need is, we think, a matter of such fundamental policy that it should be determined by the

legislature.[12] Consequently, rather than judicially expand the common law doctrine by creating a new reciprocal liability upon the wife, we conclude that the ancient necessaries doctrine, violative as it is of the ERA, is no longer part of the common law of this State *and that neither the husband nor the wife is liable, absent a contract, express or implied, for necessaries such as medical care supplied to the other.*"

*Id.* 532–33, 425 A.2d 1011 (emphasis added). *Condore's* holding was limited to the doctrine of necessaries which, as both the Court of Appeals and this Court have noted, was a remedy, not a substantive right. *Ewell v. State, supra,* 207 Md. at 292, 114 A.2d 66; *accord Dudley v. Montgomery Ward & Co., supra,* 255 Md. at 251, 257 A.2d 437; *Cruickshank–Wallace v. County Banking, supra,* 165 Md.App. at 324, 885 A.2d 403.

*Cruickshank–Wallace* is instructive. That case involved a lender's action to recover money allegedly fraudulently transferred by an insolvent husband to his wife. The wife ("Bonnie") contended the transfers were not fraudulent because:

William [the husband] received fair consideration for his transfer of the tax refunds to her because she used the money to satisfy *his* legal obligation to support *her and their children,* i.e., for 'family support.'

*Id.* at 327, 885 A.2d 403 (emphasis in original.)

In analyzing this contention, this Court reviewed the Maryland law of spousal and family support as it existed prior to passage of the Equal Rights Amendment and cases that followed its adoption, including *Condore* and *Rand v. Rand,* 280 Md. 508, 510, 374 A.2d 900 (1977), which held that Maryland's common law rule that a father had the primary obligation to support a minor child violated the amendment, as

---

**12.** Since *Condore,* the General Assembly has declined to adopt legislation creating a cause of action to permit third parties who supply necessaries to one spouse to recover against the other. *Cruickshank–Wallace v. County Banking,* 165 Md.App. at 327, 885 A.2d 403.

well as the General Assembly's responses to the changes in Maryland law wrought by the ERA, including enactment of F.L. 10–201. *Cruickshank–Wallace,* 165 Md.App. at 323–27, 885 A.2d 403. This Court stated:

> When William conveyed the tax refunds to Bonnie, they were living in an intact family with their children. They both had an equal and complete obligation to support the children that was joint and several. Their situation was not as it was for parents pre-*Rand,* when the father had a primary duty of support. Moreover, both William and Bonnie had a legal obligation not to willfully fail to support the other, if capable of rendering support. Their situation was not as it was pre-*Condore,* when it was the husband's sole and non-reciprocal legal duty to support his wife by furnishing necessaries for her and their children. Rather, Bonnie had the same obligation to support the children and to support herself and William as he had to support Bonnie, the children, and himself. The payment of household expenses and support of the children was as much Bonnie's duty as it was William's duty.

*Id.* at 335, 885 A.2d 403.

*Cruickshank–Wallace* makes it clear that the obligation to support is now mutual. F.L. § 10–201 criminalizes the wilful failure of one spouse to provide support to the other without just cause. The sanction itself necessarily implies the existence of an underlying duty. The current mutual obligation of spousal support may not be an exact reciprocation of a husband's obligation to support his wife that existed before adoption of the Equal Rights Amendment. For the purposes of deciding this case, it is not necessary for us to define the limits of that duty; instead, it is sufficient to observe that the duty to support still arises "by reason of the marital tie." *Dudley v. Montgomery Ward, supra,* 255 Md. at 249, 257 A.2d 437. The changes in the law of spousal and marital support occurring since § 9–632(d)'s predecessor was enacted in 1947 do not persuade us that the legislative intent manifest in § 9–

632(d) should be disregarded.[13]

## II.

The analysis in Part I of this opinion addresses the principal arguments of the parties. In their brief, appellees raise two additional contentions.

■ First, they state that, assuming *arguendo*, that F.L. § 10–201 creates a duty of spousal support, "in order for a spouse to be convicted under § 10–201, the spouse must have the means or capacity to obtain the resources or income in order to provide support." They point out that Mrs. Holmes was in poor health and her temporary disability benefits had expired shortly before her death. They assert that these facts "nullified any legal obligation she had to support the [a]ppellant." The argument is not convincing.

■ As we have noted above, Mrs. Holmes' right to pursue benefits survives to appellant because he was her spouse. In addition, while the evidence before the Commission indicated that Mrs. Holmes' right to benefits for temporary partial disability had expired a few days prior to her death, it is also undisputed that Mrs. Holmes had the right to pursue a claim for additional benefits when she died. In the context of eligibility for a death benefit, the Court of Appeals has held that a temporary interruption in support did not preclude a finding of dependency if there was a reasonable probability that support would be renewed. *Maryland House of Correc-*

---

**13.** The law of spousal support has changed in another significant respect. Marital misconduct is no longer an absolute bar to support upon separation or divorce. *See Freedenburg v. Freedenburg*, 123 Md. App. 729, 745–46, 720 A.2d 948 (1998); *see also* F.L. § 11–103. However, as noted previously, § 9–680(a) of the Act provides that a surviving spouse who deserts a deceased employee for more than one year prior to the occurrence of the injury or deserts the spouse after the occurrence of the injury is not entitled to payment of a death benefit. Marital misconduct is not an issue in the instant case and we express no opinion as to whether a right to disability or hernia benefits would survive to a spouse who had deserted the deceased employee at the time of the employee's injury or at the time of the employee's death.

*tion v. Jenkins,* 228 Md. 146, 151–52, 178 A.2d 892 (1962). Since the Act is to be applied liberally to benefit the persons whom the Act is intended to benefit, *Bowen v. Smith, supra,* 342 Md. at 454, 677 A.2d 81, and appellant falls into that category, we conclude that appellant's right to pursue Mrs. Holmes' claim is not defeated because, approximately two weeks before her death, her benefits lapsed and she had not yet applied for an additional award.

Finally, appellees argue that an interpretation of § 9–632 that results in compensation "always surviving to the covered spouse's surviving spouse, except for those situations where the surviving spouse has agreed to or has been adjudicated to have given up his or her right of support" is inconsistent with the general principles of legislative drafting used by the General Assembly in the Act: "[w]hen drafting the Act, the legislature chose to explicitly outline the exceptions to each statutory provision . . . or to include the language 'except as otherwise provided.' " The argument is not persuasive. The language in question became part of the Act in 1947. It is conceivable that the General Assembly could have used different language at that time, but the intent of § 9–632(d), when interpreted in the context of its legislative history, is clear.

## III.

We now turn to the question of the proper appellate disposition. Appeals from the Workers' Compensation Commission follow one of " 'two alternate modalities,' " *Simmons v. Comfort Suites Hotel,* 185 Md.App. at 224, 968 A.2d 1123 (quoting *Board of Education v. Spradlin,* 161 Md.App. 155, 166, 867 A.2d 370 (2005), quoting in turn *S.B. Thomas, Inc. v. Thompson,* 114 Md.App. 357, 364, 689 A.2d 1301 (1997)). This Court explained:

> The first modality is an "unadorned administrative appeal" pursuant to L.E. § 9–745(c) and (e), which is referred to as an appeal "on the record of the Commission." [*Spradlin* ] at 167–68, 170, 867 A.2d 370. With this type of appeal, "no new evidence is taken nor is any fresh fact-finding engaged

in. The determination of whether the decision of the Com-
mission was free from error will entail only an examination
of the record of the proceedings before the Commission."
[*Spradlin* ] at 170, 867 A.2d 370. . . .

The second modality, by contrast, is the "essential trial *de
novo*," or the "administrative appeal plus," under L.E. § 9–
745(d). *Spradlin*, 161 Md.App. at 171, 867 A.2d 370. Sub-
section (d) provides that the court should, "[o]n a motion of ·
any party," "submit to a jury any question of fact involved
in the case." *Id.*

*Simmons*, 185 Md.App. at 224–25, 968 A.2d 1123.

The proceeding before the circuit court in this case was an
"unadorned administrative appeal." There were no factual
disputes between the parties. Neither party elected to submit
issues to a jury pursuant to § 9–745(d) and, in the arguments
to the court below, both parties relied exclusively on the
record developed before the Commission. Thus, a remand for
a trial is unnecessary. *Compare Simmons*, 185 Md.App. at
225–26, 968 A.2d 1123 (reversing the circuit court's grant of
summary judgment which, in turn had reversed a decision of
the Commission favorable to employee but remanding the case
for trial since employee had elected trial by jury.)

█ We have determined that § 9–632(d) provides that a
deceased worker's right to permanent partial disability bene-
fits survives to his or her spouse if the deceased worker had a
legal obligation to support his or her spouse. This obligation
derives from the marital status and exists unless the surviving
spouse has agreed to or has been adjudicated to have given up
his or her right to support. We have noted that the Act
specifically prohibits a spouse who has deserted a deceased
worker from obtaining a death benefit and we express no
opinion as to whether benefits would survive under § 9–632(d)
to a spouse who had deserted the deceased worker. Desertion
is not an issue in this case. Thus, the circuit court erred in
granting appellees' motion for summary judgment and in
denying appellant's motion for the same.

THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY IS REVERSED AND THE CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. APPELLEES TO PAY COSTS.